WILLIAM E. DYER, Chairman, et al., Plaintiffs, v. THOMAS HALL, as Secretary of State of the State of North Dakota, Defendant.

(199 N. W. 754.)

**Constitutional law — petition for initiation of constitutional amendment, not containing full text of proposed measure, insufficient.**

A petition for the initiation of an amendment to the constitution which does not "contain the full text of the measure" proposed as required by article 26 of amendments to the Constitution, is insufficient upon its face and the secretary of state cannot, in a proceeding to review his decision refusing to file the same on the ground of insufficiency, be compelled to ·file such document as a sufficient petition.

Opinion filed August 5, 1924.

Constitutional Law, 12 C. J. § 18 p. 682 n. 82.

Original application by plaintiffs to review action of the secretary of state in refusing to file a certain initiative petition.

Decision of the secretary of state affirmed and petition dismissed.

*Langer & Nuchols,* for plaintiffs.

*Geo. F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for defendant.

*A. G. Divet,* Esq., for certain taxpayers in support of the action by the secretary of state.

JOHNSON, J. This is an application by plaintiffs for a review of the action of the secretary of state in refusing to file a petition for the initiation of a constitutional amendment pursuant to section 202 of the Constitution, article 28 of Amendments thereto. The secretary of state declined to file the petition upon the ground that, in his judgment, the same is insufficient. Article 26 of amendments to the Constitution, which provides for the initiation of statutes by petition, is made applicable to proposed amendments to the Constitution initiated by the people, pursuant to article 28 of amendments. In article 26 it is provided that "the secretary of state shall pass upon each petition and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petitions shall be subject to review by the Supreme Court." Acting pursuant to this authority, the secretary of state concluded that the petition was legally insufficient and refused to file it.

The attorney general, appearing in behalf of the secretary of state, alleges that the initiative petition is defective in several particulars. It is not necessary to discuss, or to enumerate, the alleged defects pointed out by the attorney general. In the view we take of the case, the action of the secretary of state was justified, and must be sustained, upon the ground that the petition does not contain the full text of the proposed amendment as required by article 26 of amendments, supra.

It is neither necessary nor proper, in this proceeding, to define the extent of the authority of the secretary of state with respect to the filing of initiative petitions. There is no statutory or constitutional provision that makes it his duty to find to be sufficient a petition which upon its face fails to comply with mandatory constitutional requirements. This proposition is not questioned even by those who contend for the most limited authority in that regard. See Scott v. Secretary of State, 202 Mich. 629, 168 N. W. 709.

The proposed amendment, as set out in the petition, is a lengthy

document. It proposes important, and in some respects, fundamental changes in the state's banking and fiscal system. Section 182 limits the power of the state to issue bonds and prescribes the conditions under which, and the purposes for which, state bonds may be issued. That section deals with no other subject. The proposed amendment takes no note of the fact that article 31 (§ 182) of amendments to the Constitution, was again amended at the primary election held March 18, 1924, and that by reason thereof, article 31 of amendments has been superseded.

The proposed amendment, as set out in the petition, directs a bond issue of $6,000,000, in addition to the present limit of bonded indebtedness. Four million dollars of this proposed issue is to be used to pay depositors in closed banks; two million dollars is to be used to purchase "notes and securities that have been pledged or deposited as collateral by insolvent state banks in the securing of loans to said insolvent banks." It proposes to change the personnel of the guaranty fund commission to consist of the governor, the attorney general, and the secretary of state; "all the powers, duties and responsibilities of the present state guaranty fund commission" are vested in these three officials as constituting the guaranty fund commission. The secretary of the guaranty fund commission is to be named by the governor from a list of three names submitted to him by the president, the vice-president and the secretary-treasurer of the Association of Depositors in Closed Banks. The secretary is also to be known as the guaranty fund law commissioner, and is to have "any and all powers now held by the secretary of the guaranty fund commission and perform all his said duties;" the secretary "shall also have any and all duties now held by the state bank examiner of the state of North Dakota, and shall supersede him in office," and shall be, ex-officio, receiver of all closed banks. The amendment specifically provides that "all the powers now vested in the guaranty fund commission shall be vested in the state banking board, it being the intention of this constitutional amendment to abolish the offices created and occupied by the present guaranty fund commission and to have these offices filled by the three state officials hereinbefore named, and the said officials shall be vested with all the powers, duties and responsibilities of the present state guaranty fund commission." The proposed amendment provides that "chapter 147 of the

1919 Session Laws of North Dakota, as amended, and Senate Bill Number 250, passed at the Legislative Session of 1923, amending and re-enacting the Depositors Guaranty Fund Law, shall not be repealed until the bonds issued under this amendment have been paid in full and the rate of assessments provided for shall not be amended in any manner except that § 10 is amended to read:"

Then follows § 10 of Senate Bill Number 250, being chapter 200 of the Session Laws of 1923, with proposed amendments.

It is then provided that §§ 5148 and 5149, Compiled Laws 1913, "are repealed and re-enacted" and the same are set out in full in the petition. These sections deal with the organization and incorporation of state banks, and the procedure concerning the same. It is provided in the proposed amendment that § 151 Compiled Laws, 1913, shall be applicable to the bonds issued pursuant to the amendment. Section 151 is not set out, nor are its contents further stated.

Five thousand dollars ($5,000.00) is appropriated for the purpose of carrying the amendment into effect.

Preceding the enacting clause the petition contains the following matter:

*"Petition for Initiation of Constitutional Amendment Relating to Issuing of Bonds and Fixing Debt Limit Providing that Proceeds of the Bonds Shall Be Used for Protection of the Depositors in Insolvent State Banks and Providing for a Method of Organizing, Establishing and Regulating the Number of State Banks and for Assessments to be Paid by the State Banks to the Depositors Guaranty Fund and Providing that the Guaranty Fund Commission shall Consist of the Governor, Attorney General and the Secretary of State, and that the same may be Sued."*

"We, the undersigned qualified electors of the state of North Dakota, consisting of over 20,000 of the electors at large, hereby propose the following Amendment to the Constitution of the State of North Dakota, and we request that the same be placed upon the ballot and that it be submitted to the qualified electors of the State of North Dakota at the next state-wide general election to be held after 120 days after the filing of this petition for approval or rejection.

"We do this in accordance with the provisions of § 202, as amended, of the Constitution of the State of North Dakota and in accordance

with the general laws of the State, in such case made and provided. The section sought to be amended and re-enacted is one relating to the issuing of bonds.

"Fixes the total possible bonded debt of the state without security and for industrial purposes at eighteen million dollars.

"Requires first mortgages on real estate as security for all other bond issues than the two million now issued for the Bank of North Dakota and four million proposed to be issued to pay the depositors in closed banks and two million proposed to be issued to protect collateral deposited for loans to banks.

"Provides that the Governor, State Treasurer and Secretary of State may issue and sell such bonds for certain purposes, to-wit:

(a) Not to exceed four million dollars, the proceeds of which are to be used to pay depositors in closed banks whose deposits are guaranteed by the Depositors Guaranty Fund of the State of North Dakota and not to exceed two million dollars, the proceeds of which are to be used by the Bank of North Dakota to buy pledged notes and securities for loans to insolvent banks.

(b) Provides that bonds shall be sold at not less than par and draw interest at not to exceed six per cent.

(c) Provides that the bonds may be sold and delivered by the officials named within without further authorization by Statute and that the proceeds shall be expended in the manner provided by law and this Amendment and provides for an appropriation for their printing, preparation and sale.

(d) Provides for the levying of an annual tax to create a sinking fund to be used in addition to moneys accruing in connection with the operations of the Guaranty Fund Commission Law.

(e) Limits all future indebtedness to that provided for in this Amendment except for the purpose of repelling invasion, suppressing insurrection and to provide for the public defense."

Article 26 of amendments to the Constitution, being § 25 thereof, provides in part as follows: "Every such petition shall contain the full text of the measure and shall be filed with the secretary of state not less than ninety days before the election at which it is to be voted upon." It further provides that "each petition shall have printed thereon a ballot title which shall fairly represent the subject matter of the meas-

ure and the names of at least five electors who shall constitute the 'committee for the petitioners' and who shall represent and act for the petitioners." While these provisions are found in article ·26, which provides for the initiative in legislation, they are, by article 28, § 202, pertaining to amendments to the Constitution, made applicable to constitutional amendments proposed under the initiative.

The secretary of state contends, among other things, that the petition does not contain a ballot title, which fairly represents the subject matter of the measure proposed. He claims that the matter in small type, quoted above, is the ballot title, and that it is defective, misleading, and in fact, false in several material particulars. The plaintiffs, on the other hand contend that the matter in black type, at the top of the petition, italicized, supra, is the ballot title. We find it unnecessary, in the view we take of this case, to determine which is the ballot title, and whether, either, or both, be a sufficient compliance with the constitutional requirements, quoted above. It is unfortunate that in a matter of such grave importance there can be any room for doubt as to what part of the petition is intended for and shall constitute the ballot title required by the Constitution. It should be a relatively simple matter· to prepare a ballot title fairly representing the measure proposed and to make it clear to the official, whose duty it is to print such title on the ballot, what the petitioners intend shall constitute the ballot title.

It seems to us that the petition is defective and fails to comply with the Constitution in this, that it does not contain "the full text of the measure." As has been indicated, the proposed amendment seeks to incorporate therein and to make a part of the Constitution, by reference only, § 151, Compiled Laws 1913, and, in fact, chapter 147, Session Laws 1919, and chapter 200, Session Laws 1923; it also attempts to make a part of the Constitution the numerous statutes of the state defining the powers and duties of the guaranty fund commission, the powers and duties of the secretary of the guaranty fund commission, and the powers and duties of the state examiner. None of these statutes are set out in the petition, or the proposed amendment, or in any manner, except by reference, incorporated therein. That the statutes defining the powers and duties of these officials are in effect sought to be made a part of the Constitution is too clear for argument. If the amendment as proposed be adopted, no legislative action, by the amend-

ment of any statute, can modify by subtraction therefrom, the powers and duties of these officials as defined in the existing statutes. Their powers and duties, now fixed by statute and subject to legislative modification at any time, will become embodied in the Constitution, not subject to alteration by amendments inconsistent therewith, except by constitutional change, if this proposed amendment be ratified.

The same is true with reference to chapter 147, Session Laws of 1919, and chapter 200, Session Laws 1923. Both are made parts of the proposed amendment and expressly declared irrepealable by subsequent legislation, whether initiated by the people, or enacted by the legislature.

The framers of the amendment to the Constitution, providing for the initiative and the referendum, were careful to require that every petition contain the full text of the constitutional amendment proposed. The reason for this requirement is obvious. The twenty-sixth article of amendments requires the secretary of state to mail to every voter in the state a publicity pamphlet "containing a copy of each measure together with its ballot title, to be submitted at any election." The average voter does not have conveniently at hand, the text of the Constitution or the statutes of this state; if, therefore, he is to have an opportunity to know fully and intelligently what he is doing when he signs or declines to sign a petition, or votes on a proposed amendment, it is only if the full text of the proposed amendment to the Constitution be inserted in the petition, and embodied in the publicity pamphlet sent him, that he will be able to do so. Before he votes, if the proponents of the measure, faithfully do their duty, he will have an opportunity to read a ballot title that fairly and briefly represents the measure proposed, or if he desire, he may read the full text of the amendment. If, however, provisions of the Constitution, or provisions of statutes, are incorporated in the proposed amendment, by reference only, the signers of petitions and voters, have no opportunity to read or examine fairly the contents and appreciate the real import of the proposed amendment. They will then have to rely upon the representations of interested parties. The reported cases indicate not only the great temptation to commit fraud, but the comparative ease with which frauds may be practiced in procuring signers to initiative and referendum petitions. See State ex rel. Gongwer v. Graves, 90 Ohio St.

312, 107 N. W. 1018, and State ex rel. McNary v. Olcott, 62 Or. 277, 125 Pac. 303; State ex rel. Linde v. Hall, 35 N. D. 34, 77, 159 N. W. 299. The sponsors of the amendments for the initiative and referendum in this state, which now have become a part of the Constitution, did not insert therein safe-guards against fraud commonly found in similar provisions in other states. They did, however, see fit to insert one such safe-guard, i. e., the requirement that the petition contain the full text of the measure proposed. We see no reason why the secretary of state should accept as sufficient petitions that, upon their face, fail to comply with this mandatory provision of the Constitution. The notion that the fundamental law of the state can be weighted, in the manner here attempted, by incorporating therein by reference only a large number of statutes, enacted during a period of many years and scattered throughout several volumes of compiled statutes and session laws, is entirely novel in American jurisprudence. The fact that the proposed amendment is somewhat of a novelty in that respect does not, it is true, give rise to a conclusive presumption against it; it suggests, however, that there may be, probably are, powerful considerations why this method of amending the fundamental law has never, as far as we know, been heretofore adopted in any state. Constitutions are supposed to be models of clear and concise statement, solemnly adopted by the people as guides to and restraints not only upon legislatures, but the people themselves. To require the people, the legislature and the courts, when constitutional questions arise, to go outside the instrument, to delve into statutes, some of which may have been modified or repealed by subsequent inconsistent legislation and to search through several volumes of laws, is utterly foreign to American constitutional theory and practice. We think that the purpose of the requirement that the petition contain the full text of the proposed amendment was to obviate all uncertainty as to the subject matter dealt with in the Constitution, and to lessen the possibility of fraud or imposition in procuring signatures.

It is no answer to say that the petition will become too lengthy, because in order to make fully effective the proposed amendment, providing for the issuing of bonds, it was deemed advisable in the instant case, to amend and repeal existing statutes. The Constitution itself suggests the solution of this supposed difficulty. It would have been

easy, and would involve no hardship upon the interested parties, to propose, under the initiative for legislation, such amendments and repeals separately, as were deemed necessary to make effective the amendment, the primary purpose of which seems to be to provide for the issuance of $6,000,000, of bonds for the purpose of paying depositors in closed banks and of buying collateral securities. The secretary of state, indeed, contends that there is such a mingling of constitutional and legislative matter in this petition as to render the same defective. We do not discuss or decide this question. It is not necessary to a decision of this case. It is doubtful to what extent, if any, that question may be properly inquired into, or raised, in a proceeding of this kind. We are satisfied that the petition, upon its face, fails wholly to comply with the mandatory provision of the Constitution requiring the petition to contain the full text of the measure proposed. Scott v. Secretary of State, 202 Mich. 629, 168 N. W. 709. The Secretary of State properly refused to accept the petition as sufficient and his decision in that regard is affirmed. The petition for review is dismissed.

BRONSON, Ch. J., and BIRDZELL, NUESSLE, and CHRISTIANSON, JJ., concur.