[File No. 6052.]

ED. C. ANDERSON, Petitioner, v. ROBERT BYRNE, as Secretary of the State of North Dakota, E. E. Greene, L. H. Byer, C. W. Fine, Lee B. Hampton and W. J. Maddock, Respondents.

(242 N. W. 687.)

Opinion filed May 28, 1932.

*Lawrence, Murphy, Fuller & Powers,* for petitioner.

*James Morris,* Attorney General, and *Charles Simon,* Assistant Attorney General, for respondent Byrne, *William Lemke,* for respondent Greene.

BIRDZELL, J. The petitioner has filed in this court a petition for a review of the action of the secretary of state in holding sufficient and filing an initiative petition for a measure providing for a five-year partial moratorium. Combined with the petition for review, the petitioner alleges that the proposed measure is unconstitutional and void and asks that the secretary of state be permanently enjoined from its publication and from placing the same upon the official ballot for election.

The petitioner and plaintiff, petitioning for review, alleges that he is a resident and taxpayer in the county of Cass, state of North Dakota, and interested in the event of the proceeding; that the respondent Byrne is secretary of state of the state of North Dakota; that the other respondents are members of a committee for petitioners and that the document filed with the secretary of state purports to be an initiative petition for the measure in question. It is alleged that the secretary of state had accepted and filed the petition and found the same to be legal and sufficient to justify the placing of the measure upon the ballot at the election to be held on June 29, 1932. The petitioner alleges that the initiative petition is void and insufficient in that it "fails to contain the full text of the measure, which in said petition is set forth, and it does not purport to contain or include any text of said measure whatever as required by article 2, § 25, of the State Constitution." Also, "That the said petition is insufficient and void for the reason that the purported measure or law therein contained is unconstitutional and void in the respects and particulars set forth and hereinafter alleged in the attached petition for a writ of prohibition, the allegations of which are referred to and adopted as a part of this petition for review."

In his petition or application for a writ of prohibition or other writ restraining further proceedings looking toward the submission of the purported measure to election, the petitioner alleges that the attorney general declines to maintain the proceeding in the name of the state

and that the petition is made in behalf of the state by the petitioner and in behalf of the citizens and taxpayers of the state similarly situated with him; that the proposed measure is "wholly unconstitutional or otherwise void in this:

"(1) It extends the benefits of a moratorium against the enforced collection of taxes and other indebtedness contrary to the interests of the state as tax payee and creditor (in its capacity as a sovereign state and also as a private industry). That the whole of said act is made to depend upon a classification of persons and property which is so indefinite that it is unenforceable and void.

"(2) That the said act in so far as the same suspends the law for the collection of taxes, represents an unconstitutional and illegal surrender of the police power of the state to maintain itself by the collection of tax revenues.

"(3) That, in so far as said act suspends the enforced collection of existing indebtedness other than taxes, it impairs the obligation of contracts and disturbs the vested rights of certain financial instrumentalities of the public, chartered by and operated under the supervision of the state government, to wit: building and loan associations hereinafter mentioned; and said act deprives the said associations and their members of property without due process of law.

"(4) That, for reasons above stated, the said measure is void in its entirety; that, for other reasons hereinafter set forth, so much of the object and purpose of said act is illegal that the whole thereof should be adjudged void."

It contains allegations showing the consolidated tax levy for the year 1931 and the percentage thereof, 17.79 per cent, uncollected. It alleges that the greater part or practically all such unpaid taxes were levied upon property of persons who would be entitled to the benefits of the proposed moratorium, and it shows the prospective inability of the state and its governmental subdivisions to function normally if their right to collect taxes previously levied be substantially impaired.

The petitioner alleges that he is the owner and holder of shares of invested capital in certain building and loan associations organized under the laws of this state and that the moneys of the petitioner and others similarly situated have been placed in the hands of such associations for investment and have been invested in real estate mort-

gages on numerous dwelling houses and that the interest income derived from this source constitutes the income of investments of the petitioner and other members; that there are more than one hundred thousand members and holders of capital stock in the building and loan associations organized under the laws of this state and that the combined investments of capital and deposits of members in real estate mortgage securities approximate ten million dollars, which investments yield to the members approximately six per cent per year. It is then alleged:

"That, according to the purported effect of the said measure and the benefits thereof conferred upon each of the said mortgage borrowers, the mortgagor may decline to pay any part of the principal or interest on his mortgage loan until a foreclosure sale is made and, thereafter, but one per cent per year of the amount at which the mortgaged property may be sold or bid in at such sale. That said mortgagor, by the terms of said act, is not obliged to repair or maintain insurance upon the mortgaged premises nor pay the taxes of the years 1931 and 1932 thereon, to enjoy the benefits of such moratorium; and that said mortgagor may take and retain the value of possession or rents of the mortgaged premises for a period of five years at a cost to him of but one per cent per year of the amount of the mortgage indebtedness.

"That the exercise of their rights, under said law, by the said mortgage borrowers, will automatically reduce the income of petitioner, and others similarly situated, from six per cent to one per cent per year; will necessitate the cost and expense of numerous foreclosures to enforce the payment of the said one per cent of the mortgage indebtedness, and depreciate the value of the physical security of said creditors during the period of said moratorium, and destroy the value of existing memberships and capital shares in the said associations."

It is further alleged that the obvious and unavoidable effect of the publication of the proposed law will be to create a far-reaching doubt and apprehension as to the value and enforceability of real estate loans and investments of savings and building and loan associations and will have an adverse effect upon the maintenance of existing savings deposits.

The petitioner alleges that he is also the owner of or interested in

certificates of tax sales on lands of persons entitled to the benefits of said moratorium.

There are further specific allegations of unconstitutionality as follows:

"That each and every part of said act is contradictory of numerous existing provisions of the constitution and statutes of this state; that said act does not purport to amend said provisions, but is void as an illegal attempt to suspend the operation of the same.

"That by reason of all the facts aforesaid, the said proposed measure is void and unconstitutional in that it violates the Fourteenth Amendment to the Constitution of the United States and §§ 16, 20, 22, 61, and § 69, subd. 25 and subd. 27 of the State Constitution."

To the petitions separate answers and returns were made by the respondent Byrne, as secretary of state, and by the respondents comprising the committee for the initiative petitioners. In the answer and return of the secretary of state, it is alleged that the initiative petition in question was filed in his office on the 30th day of March, 1932, and that as secretary of state he accepted and filed the said petition after an examination had been made and the same had been found sufficient in form, sufficient as to the number of signatures, the dating of the same, the notations of postoffice address and residence of signers; sufficient also as to text and ballot title and as to verification. It is alleged that the petition as to form and number of signatures is sufficient under article 2, § 25, Constitution of the State of North Dakota, as amended. This respondent submits the original petitions for review by this court as to their sufficiency, but alleges that in passing thereon he, as secretary of state, was not concerned with the constitutionality of the proposed initiative measure and, in a review of his action thereon, suggests that this court should consider the questions raised with reference to the constitutionality of the act to be premature. The answer and return of the committee of the initiative petitioners admits the truth of the formal allegations of the petition, denies the rest and alleges that the petition in all matters complies with the requirements of § 25, article 2, as amended, of the state Constitution.

Under the issues as framed it will at once be seen that no question is raised concerning any formal requirements with reference to the number of signers, the manner of attaching their names, dates, resi-

dence and postoffice addresses or verification. In so far as the petitioner invokes the jurisdiction of this court to review the action of the secretary of state, expressly conferred by article 2, § 25, of the Constitution, the only issues as to the sufficiency of the petition are concerned with its substance; that is, with whether or not it contains the full text of the measure and whether or not it purports on its face to amend, suspend or repeal various provisions of the statutes and of the constitution without complying with the governing provisions of the constitution as to the manner in which this may be done.

The issues arising upon the petition for further relief by way of prohibition or injunction are concerned with the constitutionality of the proposed measure upon other grounds than those affecting the form in which its substantial provisions appear and will be sufficiently stated for the purposes of this opinion following a consideration of the issues first mentioned.

In support of the contention that the petition is invalid for failure to incorporate the text of the measure, counsel rely chiefly upon the case of Dyer v. Hall, 51 N. D. 391, 199 N. W. 754. In that case this court reviewed and sustained the action of the secretary of state in refusing to file a petition for the initiation of a constitutional amendment. While the substance of the proposed amendment was stated at great length in the petition, various statutory enactments which, through it, would have formed a part of the constitution were not set out. To illustrate: the proposed measure conferred upon the guaranty fund commission "all the powers, duties and responsibilities of the present state guaranty fund commission," a statutory body, and the secretary of the commission was to have "any and all powers now held by the secretary of the guaranty fund commission and perform all his said duties;" also, "any and all duties now held by the state bank examiner of the state of North Dakota, and shall supersede him in office" (the examiner being a statutory officer) and certain enumerated sections of the Compiled Laws were referred to as being applicable to all bonds issued pursuant to the amendment. This court held the proposed amendment to be defective for failure to comply with the Constitution in that it did not contain the full text of the measure, using the following language (page 396 of 51 N. D.) :

"As has been indicated, the proposed amendment seeks to incorporate

therein and to make a part of the Constitution, by reference only, § 151, Compiled Laws 1913, and, in fact, chapter 147, Session Laws 1919, and chapter 200, Session Laws 1923; it also attempts to make a part of the Constitution the numerous statutes of the state defining the powers and duties of the guaranty fund commission, the powers and duties of the secretary of the guaranty fund commission, and the powers and duties of the state examiner. None of these statutes are set out in the petition, or the proposed amendment, or in any manner, except by reference, incorporated therein. That the statutes defining the powers and duties of these officials are in effect sought to be made a part of the Constitution is too clear for argument. If the amendment as proposed be adopted, no legislative action, by the amendment of any statute, can modify by subtraction therefrom, the powers and duties of these officials as defined in the existing statutes. Their powers and duties, now fixed by statute and subject to legislative modification at any time, will become embodied in the Constitution, not subject to alteration by amendments inconsistent therewith, except by constitutional change, if this proposed amendment be ratified."

In considering whether omissions of the character there involved justified the refusal of the secretary of state to disregard the petition as legally insufficient, the court further said (page 397 of 51 N. D.):

"The framers of the amendment to the Constitution, providing for the initiative and the referendum, were careful to require that every petition contain the full text of the constitutional amendment proposed. The reason for this requirement is obvious. The twenty-sixth article of amendments requires the secretary of state to mail to every voter in the state a publicity pamphlet 'containing a copy of each measure together with its ballot title, to be submitted at any election.' The average voter does not have conveniently at hand, the text of the Constitution or the statutes of this state; if, therefore, he is to have an opportunity to know fully and intelligently what he is doing when he signs or declines to sign a petition, or votes on a proposed amendment, it is only if the full text of the proposed amendment to the Constitution be inserted in the petition, and embodied in the publicity pamphlet sent him, that he will be able to do so. Before he votes, if the proponents of the measure, faithfully do their duty, he will have an opportunity to read a ballot title that fairly and briefly represents the measure

proposed, or if he desire, he may read the full text of the amendment. If, however, provisions of the Constitution, or provisions of statutes, are incorporated in the proposed amendment, by reference only, the signers of petitions and voters, have no opportunity to read or examine fairly the contents and appreciate the real import of the proposed amendment. They will then have to rely upon the representations of interested parties. . . . The sponsors of the amendments for the initiative and referendum in this state, which now have become a part of the Constitution, did not insert therein safeguards against fraud commonly found in similar provisions in other states. They did, however, see fit to insert one such safeguard, i. e., the requirement that the petition contain the full text of the measure proposed. We see no reason why the secretary of state should accept as sufficient petitions that, upon their face, fail to comply with this mandatory provision of the Constitution."

Much of what is there said is clearly inapplicable to an initiative proposal to adopt a statute. It was proposed to incorporate into the Constitution certain named and unnamed sections of the code without setting them forth in the measure itself. We were necessarily concerned with what would ultimately be the fundamental law of the state and with the form in which it would abide in the event of the adoption of the proposal. We are here concerned only with a proposed statute that contains within itself the complete expression of legislative purpose. Nothing is sought to be incorporated by reference. It may with perfect propriety conflict with many pre-existing statutes. There is no requirement that a statute thus affected by a subsequent statute must be incorporated or otherwise referred to in the measure or later enactment. Petitioners in proposing a new statute changing or affecting existing laws in numerous respects are under no different obligation to set forth or enumerate the conflicting statutes affected thereby than would be the legislature itself pursuing a similar purpose. All that is required in this respect is that the petition contain the full text of the measure or the full expression of the legislative will. This requirement is met in the instant case.

Counsel also invoke the authority of the supreme court of Iowa in the case of Mathews v. Turner, 212 Iowa, 424, 236 N. W. 412. There the court granted a decree enjoining the submission of a proposed con-

stitutional amendment respecting the incurring of a state debt and the issuance and sale of state bonds for highways, holding the proposed amendment to be in contravention of the provision of the state constitution which required that where two or more amendments are submitted at one election they must be submitted separately. The proposal there involved was construed to amount to several amendments, each of which should have been so submitted that the electors would have an opportunity to vote for or against each separately. See State ex rel. Fargo v. Wetz, 40 N. D. 299, 168 N. W. 835, 5 A.L.R. 731. So construed, the form of the proposal was such that if carried it would not have resulted in amending the constitution. The principle applied is in harmony with the Dyer case, supra, but the case is not authority for enjoining the submission of a proposed statute which contains a complete expression of the legislative will of those who will vote favorably upon it and with respect to which all mandatory procedural requirements have been met.

While there is some contention that the proposed measure in the instant case is contrary to some existing constitutional provisions and therefore amounts to a proposal to amend the constitution, it clearly does not purport to be a proposed amendment to the constitution, and counsel for the committee of petitioners disclaim any such purpose. Counsel for the committee say that the proposed measure is in no sense one for a constitutional amendment and that the enactment, to be effective, must not only receive a favorable vote but must conform to all existing constitutional provisions.

Upon this review of the action of the secretary of state in holding the petition in the instant case sufficient, we are of the opinion that the petition is not insufficient in any of the respects contended for by the petitioner and that the action of the secretary of state was proper.

We are next called upon to consider the questions presented upon the application for prohibition or injunctive relief predicated upon the alleged unconstitutionality of the proposed measure, in the event of its adoption, from the standpoint of the subject matter itself as distinguished from questions of constitutionality on account of the form and procedure employed in the process of enactment. Upon these issues counsel argue pro and con as to whether or not, and the extent to which, courts of equity have jurisdiction to enjoin or otherwise

interfere with a proposed election, but as we view the case in hand it is neither necessary nor proper for us to enter into any extended discussion of this question. Suffice it to say, this court has heretofore held that where no law exists under which a proposed election may be held, and where it is thus apparent that the election itself will accomplish nothing, the court may properly enjoin officers whose acts otherwise would result in a useless expenditure of public funds. State ex rel. Linde v. Hall, 35 N. D. 34, 159 N. W. 281.

Where the invalidity is predicated, however, upon alleged effects of a proposed measure adverse to the constitutional rights of the complaining party and such claim is made before the measure has ripened into a law, an entirely different question is presented. The question no longer involves the existence or non-existence of a law authorizing the election or a consideration of substantial compliance with mandatory procedural requirements which can be determined as well in advance of the election as afterward. It enters at once into the more delicate field in which the judiciary is called upon to interpret and enforce the fundamental law. Where such a question is sought to be raised before there has been any enactment that can be said to be contrary to the fundamental law, there is, in effect, an attempt to interfere with the exercise of a legislative function. This court is not authorized to render advisory opinions and it has not held in any case that it will go into the substance of a measure before passage for the purpose of determining whether or not those who would probably be affected will be deprived of some right guaranteed to them by the Constitution in the event the proposed measure passes. It has never recognized that it is any part of the judicial function to interfere with the constitutional processes of legislation. See State ex rel. Carson v. Kozer, 126 Or. 641, 270 Pac. 513. On the other hand, in exercising its constitutional prerogative to pass upon the validity of legislation when enacted, it has consistently adhered to the principle that the judicial function of determining the deliberate act of the legislative branch of the government to be violative of the Constitution is a delicate one, one to be approached and exercised with appropriate reluctance and solemnity. We have heretofore quoted with approval the following forceful expression of this principle by Cooley (see State

ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583):

"The legislative and judicial are co-ordinate departments of the government, of equal dignity; each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly, while acting within the limits of its authority, be subjected to the control or supervision of the other, without an unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it. The Constitution apportions the powers of government, but it does not make any one of the three departments subordinate to another, when exercising the trust committed to it. The courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it.

"But the courts sit not to review or revise the legislative action, but to enforce the legislative will; and it is only where they find that the legislature has failed to keep within its constitutional limits, that they are at liberty to disregard its action; and in doing so, they only do what every private citizen may do in respect to the mandates of the courts when the judges assume to act and to render judgments or decrees without jurisdiction. 'In exercising this high authority, the judges claim no judicial supremacy; they are only the administrators of the public will. If an act of the legislature is held void, it is not because the judges have any control over the legislative power, but because the act is forbidden by the Constitution, and because the will of the people, which is therein declared, is paramount to that of their representatives expressed in any law.' . . . It is a solemn act in any case to declare that that body of men to whom the people have committed the sovereign function of making the laws for the commonwealth have deliberately disregarded the limitations imposed upon this delegated authority, and usurped power which the people have been careful to withhold; and it is almost equally so when the act which is adjudged to be unconstitutional appears to be chargeable rather to careless and improvident action, or error in judgment, than to inten-

tional disregard of obligation." Cooley, Const. Lim. 7th ed. pp. 227, 228.

Pursuant to this principle we have repeatedly held that a litigant can be heard to question the validity of a statute only when, and in so far as, it is applied to his disadvantage. State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292; State v. First State Bank, 52 N. D. 231, 202 N. W. 391; Minot Special School Dist. v. Olsness, 53 N. D. 683, 208 N. W. 968, 45 A.L.R. 1337. If such be the approach in testing the validity of legislation after enactment, we can see no reason for applying a different principle during the mere process of enactment. When the constitution is invoked against the action of other departments of the government only actual, rather than anticipated, invasion of constitutional rights invoke judicial concern.

The petition and complaint and the affidavit in support thereof purport to show that the petitioner and plaintiff will sustain a loss on account of the publication of the proposed law and on account of the resulting doubt which will be cast upon the value and enforceability of real estate loans and investments of savings and of building and loan associations and that this damage is inescapable and will not be repaired though the measure, if adopted, be subsequently held invalid. An injury of this sort is clearly traceable to the free exercise of governmental functions by the legislative department and is not an injury for which redress may be had.

It seems to us that the various contentions of the petitioner find a conclusive answer in the provisions of article 2, § 25 of the Constitution. There legislative power is reserved to the people and the manner in which it may be exercised is stated in mandatory terms, the section itself being declared to be self-executing and its provisions mandatory. No reason is apparent why this power is not to be exercised as independently by the people in whom it is reserved as when exercised by the legislative assembly. A power or jurisdiction is given to the supreme court to review the decisions of the secretary of state in regard to the petition. This clearly does not mean that upon such review the court is to examine the petition to determine the ultimate constitutionality of the proposed measure. This would be to attribute an intention to give to the secretary of state authority to reject a petition because he thought the measure unconstitutional. The secretary of state is con-

cerned only with the *sufficiency* of the petition; not the constitutional validity of the measure. Sufficiency in this connection means what a like expression in a statute in Oregon was held to mean in the case of State ex rel. Carson v. Kozer, supra, where the court said (p. 641, 126 Or., page 515, 270 Pac.): ."In the nature of things, it can have no reference whatever to the question of whether the proposed measure, if adopted, would be constitutional;" for, as was further said by the Oregon court, and the statement is equally applicable in this state, as pointed out above, "Under the settled procedure of this state there is no power inherent in the courts to determine whether or not a proposed law before it has been enacted is constitutional or unconstitutional. Neither the Constitution itself nor any statute gives to the courts any such power. The courts of this state never attempted to exercise such a power. . . . Where all the statutory requirements have been complied with, no court or executive officer has any authority to interfere or prevent a vote thereon. In such case the people alone are authorized to determine whether the proposed measure shall be enacted into law, and if the measure, when enacted, is unconstitutional, then only have the courts power to declare it to be unconstitutional. The courts, therefore, can no more prevent, when all statutory requirements have been complied with, the people from voting upon a proposed initiative measure, than it could prevent the Legislative Assembly, when convened, from voting upon the same measure."

It follows from what has been said that the petitioner and plaintiff has made no showing which entitles him to any relief sought and that the petition and complaint must be dismissed. It is so. ordered.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and BURKE, JJ., concur.