# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 177

Michael J. Haugen, Jacob Stutzman, Trent
Barkus, and Brighter Future Alliance,                            Petitioners

      v.

Alvin Jaeger, in his official capacity as
North Dakota Secretary of State, and the
Sponsoring Committee of Measure 3,                          Respondents

### No. 20200213

WRIT OF INJUNCTION GRANTED.

Per Curiam.

David W. Asp (argued), Minneapolis, MN, and Shane C. Goettle (appeared),
Mandan, N.D., for petitioners.

David R. Phillips (argued), Assistant Attorney General, and Matthew A.
Sagsveen (appeared), Solicitor General, Office of the Attorney General,
Bismarck, N.D., for respondent Alvin Jaeger.

Timothy Q. Purdon (argued), Bismarck, N.D., for respondent Sponsoring
Committee of Measure 3.

Challis D. Williams (on brief), Grand Forks, N.D., for amicus curiae.

**Per Curiam.**

[¶1]   Michael J. Haugen, Jacob Stutzman, Trent Barkus, and the Brighter Future Alliance seek a writ enjoining Secretary of State Alvin Jaeger from placing an initiated measure on the November 3, 2020 ballot.  The measure seeks to amend the North Dakota Constitution concerning elections and legislative districting. We grant the writ, concluding the petition does not comply with the constitutional requirement that it contain the full text of the measure.  We set aside the Secretary of State's decision to place Measure 3 on the November ballot and enjoin him from doing so.

I

[¶2]   In March of 2020, the Sponsoring Committee sought the Secretary of State's approval, as to form, for a petition to initiate a measure that would amend the North Dakota Constitution to include provisions dealing with the transmission of voting ballots to overseas military members, voting records, open primaries, a run-off election system, and legislative districting. The Secretary of State approved the petition as to form and provided the Sponsoring Committee with a petition title. The petition title reads:

> This initiated measure would add a new section to and amend Section 2 of Article IV of the North Dakota Constitution. It would require ballots to be transmitted to qualified military-overseas electors by the sixty-first day before an election. It would require all voting machines to produce a paper record of each vote cast and the Secretary of State to conduct a random audit of election results and issue an audit report within 120 days of an election. It would establish a new process for open primary elections in which all electors would be allowed to vote the ballot regardless of political party affiliation; all candidates for each office would be listed on a single ballot; candidates would be allowed, but not required, to identify their political party; and, regardless of political party identification, the four candidates receiving the most votes would advance to the general election ballot for that office. No other candidates could appear except those nominated through the

primary election. It would permit political parties to state on the ballot which candidates they endorse. It would allow voters in general elections to rank their first, second, third, and fourth choices of the candidates for each office and have the votes counted through a defined procedure until a candidate receives a majority of the votes cast for that office. It would require the Ethics Commission to draw legislative senatorial districts by unanimous vote, divide each senatorial district into two legislative house districts, hold eight public hearings on the proposed redistricting plan with two of the hearings held on two different American Indian Reservations, and follow certain criteria for the drawing of legislative districts. It would require the Secretary of State to provide the Ethics Commission with the tools and data necessary to draw the districts and the legislature to provide adequate funds for the duties of the Ethics Commission.

[¶3] On July 6, 2020, the Sponsoring Committee submitted the final petitions with accompanying signatures to the Secretary of State for approval. On August 11, 2020, the Secretary approved the petition to appear on the November ballot as Measure 3. On August 12, 2020, the Petitioners filed for a writ enjoining the Secretary of State from placing Measure 3 on the November ballot. They argue the petition is legally insufficient because it does not contain the full text of the measure and its title does not adequately represent the measure's substance.

II

[¶4] It is the Secretary of State's duty to review the form and sufficiency of petitions to initiate or refer a measure. *See* N.D. Const. art. III, §§ 2, 6; *see also North Dakota State Bd. of Higher Ed. v. Jaeger*, 2012 ND 64, ¶ 10, 815 N.W.2d 215. These responsibilities are "limited" and "ministerial in nature." *State Bd. of Higher Ed.*, at ¶ 10. "Under the principle of separation of powers, courts do not substitute their judgment for that of an executive officer who has exercised a discretionary function. That has no application, however, to ministerial acts." *McCarney v. Meier*, 286 N.W.2d 780, 783 (N.D. 1979) (citation omitted).

[¶5] "All decisions of the secretary of state in the petition process are subject to review by the supreme court in the exercise of original jurisdiction." N.D.

Const. art. III, § 7. We independently examine the Secretary of State's decision on a petition issue to determine whether he has complied with the law. *Mun. Services Corp. v. Kusler*, 490 N.W.2d 700, 702 (N.D. 1992). Our authority to review the Secretary of State's petition decisions is "without limitation or qualification." *Id.* at 701.

[¶6]   Article III of the North Dakota Constitution sets out the requirements for petitions to initiate or refer a measure. The provisions of Article III are self-executing and mandatory. N.D. Const. art. III, § 1. Among other requirements, a petition must contain "the full text of the measure." N.D. Const. art. III, § 2. When a petition is challenged, the burden of proof is on the party attacking the petition. N.D. Const. art. III, § 6. Because questions of law do not involve burdens of proof, there is no burden of proof on anyone when the Court reviews purely legal issues not involving factual disputes. *McCarney*, 286 N.W.2d at 783.

[¶7]   The challengers assert the petition for Measure 3 does not contain the measure's full text. They point to Section 1 of Measure 3 which deals with the transmission of ballots to overseas military members. Section 1 requires that, sixty days before an election, "the secretary of state shall transmit ballots and balloting materials to all covered voters who submit a valid military-overseas ballot application." It goes on to state this requirement "shall apply for all elections covered in N.D.C.C. section 16.1-07-19." The measure does not provide the language of section 16.1-07-19, which lists the following elections:

1.   A general, special, or primary election for federal office.
2.   A general, special, or primary election for statewide or state legislative office or state ballot measure.
3.   A general, special, or primary election for political subdivision office or political subdivision ballot measure.

[¶8]   In *Dyer v. Hall*, 199 N.W. 754 (N.D. 1924), this Court held the Secretary of State's refusal to accept an initiated measure amending the North Dakota Constitution was justified because it incorporated certain laws as part of the measure but did not set forth the text of the laws. The laws the measure sought to incorporate were "a large number of statutes, enacted during a period of

many years and scattered throughout several volumes of compiled statutes and session laws . . . ." *Id.* at 757. The Court reasoned the constitutional requirement that a petition contain a measure's full text prohibited incorporating statutes by reference in a measure to amend the Constitution because those laws would become embodied in the Constitution and not subject to change by normal legislative action. *Dyer*, at 756. The Court also expressed concern about transparency in the petition process, noting that if laws are incorporated in a petition only by reference, voters "have no opportunity to read or examine fairly the contents and appreciate the real import of the proposed amendment." *Id.* at 757.

[¶9]   The Secretary of State and the Sponsoring Committee argue the rule set out in *Dyer* is not applicable here. They claim this case is different because the petition for Measure 3 has only a single statutory citation, rather than the many laws included in the *Dyer* petition.  They also claim the concern in *Dyer*— that electors would not have access to the laws referenced in a petition—is no longer an issue. They assert technological advances have given the average voter convenient access to legal materials via the internet.

[¶10] We are not persuaded by these arguments. The *Dyer* Court, although concerned with lessening the possibility of fraud and ensuring voters' access to laws referenced in petitions, was also "necessarily concerned with what would ultimately be the fundamental law of the state and with the form in which it would abide in the event of the adoption of the proposal." *Anderson v. Byrne*, 242 N.W. 687, 691 (N.D. 1932). The Court concluded the purpose of the full-text requirement was to "obviate all uncertainty as to the subject-matter dealt with in the Constitution . . . ." *Dyer*, 199 N.W. at 757. Despite advances in technology, this concern is still prevalent today. Embedding a statute into the Constitution, which by definition is a law inferior to the Constitution and subject to change by normal legislative procedure, would threaten the sanctity of our fundamental law.

> Constitutions are supposed to be models of clear and concise statement, solemnly adopted by the people as guides to and restraints, not only upon Legislatures, but the people themselves. To require the people, the Legislature, and the courts, when

4

constitutional questions arise, to go outside the instrument, to delve into statutes, some of which may have been modified or repealed by subsequent inconsistent legislation and to search through several volumes of laws, is utterly foreign to American constitutional theory and practice.

*Id.* Here, as in *Dyer*, the full-text requirement in N.D. Const. art. III, § 2, prohibits incorporating a statute by reference in a petition to initiate or refer a measure that would amend the Constitution. Because the requirements in Article III are mandatory, it is "absolutely necessary" for a petition to meet this requirement. *RECALLND v. Jaeger*, 2010 ND 250, ¶ 26, 792 N.W.2d 511.

### III

[¶11] Given our holding, we need not address the challengers' argument concerning the sufficiency of the petition title. We grant the Petitioners a writ of injunction, set aside the Secretary of State's decision, and enjoin him from placing Measure 3 on the November ballot.

[¶12] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte