IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2024 ND 236

City of Fargo,                                             Plaintiff and Appellant

  v.

State of North Dakota,                               Defendant and Appellee

No. 20240125

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Cherie L. Clark, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Peter W. Zuger, Fargo, ND, for plaintiff and appellant.

Courtney R. Titus, Assistant Attorney General, Bismarck, ND, for defendant and appellee.

Stephanie D. Engebretson, Bismarck, ND, for amicus curiae North Dakota League of Cities.

**Bahr, Justice.**

[¶1]   The City of Fargo appeals from a judgment entered after the district court granted the State summary judgment and dismissed Fargo's complaint for declaratory relief. We conclude N.D.C.C. §§ 40-05.1-06 and 62.1-01-03, as amended in 2023, are constitutional and expressly preempt and render void Fargo Municipal Code §§ 20-0403(C)(5)(e) and 20-402(T)(3). We affirm the judgment.

I

[¶2]   Fargo is a home rule municipality with an adopted home rule charter. Article 3 of its home rule charter provides: "The city shall have all powers granted to municipal corporations *by the constitution and the laws of this state* together with all the implied powers necessary to execute such powers." (Emphasis added.) The charter sets forth Fargo's powers that may be implemented by ordinance, including the power to provide for public health, safety, morals, and welfare; to define offenses against private persons and property; and to provide for the zoning of property. *See* Fargo Municipal Code, Home Rule Charter, art. 3(G), (I), (K).

[¶3]   Fargo adopted use regulations for residential districts, including Fargo Municipal Code §§ 20-0403(C)(5)(e) and 20-402(T)(3). As relevant to this case, section 20-0403(C)(5)(e) provides "[t]he sale of firearms and/or ammunition, and the production of ammunition for sale or resale are prohibited as home occupations." Section 20-402(T)(3) prohibits "[f]irearms and [a]mmunition [s]ales" from non-farm commercial use zoned districts.

[¶4]   In 2023, the legislature passed House Bill 1340, which amended N.D.C.C. § 40-05.1-06, governing home rule powers, and N.D.C.C. § 62.1-01-03, governing limitation on political subdivision authority regarding firearms. *See* 2023 N.D. Sess. Laws ch. 106, §§ 2, 3 (effective Aug. 1, 2023). Specifically, H.B. 1340 amended section 40-05.1-06(12) and (14) to provide:

From and after the filing with the secretary of state of a charter framed and approved in reasonable conformity with the provisions of this chapter, such city, and the citizens thereof, shall, if included in the charter and implemented through ordinances, have the following powers set out in this chapter:

. . . .

12. To define offenses against private persons and property and the public health, safety, morals, and welfare, and provide penalties for violations thereof. This subsection is subject to the provisions of section 62.1-01-03.

14. To provide for zoning, planning, and subdivision of public or private property within the city limits. To provide for such zoning, planning, and subdivision of public or private property outside the city limits as may be permitted by state law. This subsection is subject to the provisions of section 62.1-01-03.

2023 N.D. Sess. Laws ch. 106, § 2. H.B. 1340 amended N.D.C.C. § 62.1-01-03 to provide:

1. A political subdivision, including home rule cities or counties, may not enact a zoning ordinance or any other ordinance relating to the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition which is more restrictive than state law. All such existing ordinances are void.

2. A political subdivision, including home rule cities or counties, may not enact a zoning ordinance relating to the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition. All such existing ordinances are void.

3. This section does not limit the ability of a political subdivision, including home rule cities or counties, to enforce an ordinance or zoning regulation relating to a business operation if the restriction in the ordinance or regulation:

   a. Applies equally to all persons engaging in commerce within the area subject to the ordinance or regulation; and

   b. Is not specifically related to the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition.

> 4.    The absence of a state law restriction relating to the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition may not be construed to allow a political subdivision, including a home rule city or county, to enact an ordinance restricting the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition.
>
> 5.    A person aggrieved under ~~subsection 1~~this section may bring a civil action against a political subdivision for damages as a result of an unlawful ordinance.

2023 N.D. Sess. Laws ch. 106, § 3.

[¶5]   In August 2023, Fargo commenced this declaratory judgment action requesting the district court to declare H.B. 1340, amending N.D.C.C. §§ 40-05.1-06 and 62.1-01-03, unconstitutional. Fargo alternatively requested the court to declare the amended statutes did not render void Fargo Municipal Code §§ 20-0403(C)(5)(e) and 20-402(T)(3). The State answered the complaint. Both Fargo and the State subsequently moved for summary judgment.

[¶6]   In February 2024, the district court entered an order granting the State's summary judgment motion, denying Fargo's motion, and dismissing with prejudice Fargo's complaint for declaratory relief. The court concluded H.B. 1340, and its limitation of home rule powers, does not violate article VII of the North Dakota Constitution and does not infringe on any of Fargo's implied powers. The court further held H.B. 1340 expressly preempts and voids the zoning ordinances at issue in this case.

II

[¶7]   Fargo argues the district court erred in denying its summary judgment motion and in granting the State's motion.

[¶8]   We review summary judgment in a declaratory judgment action under the same standard as in other cases. *Somerset Ct., LLC v. Burgum*, 2021 ND 58, ¶ 7, 956 N.W.2d 392; *Env't Driven Sols., LLC v. Dunn Cnty.*, 2017 ND 45, ¶ 6, 890 N.W.2d 841; *see also* N.D.C.C. § 32-23-07 ("All orders, judgments, and decrees under this chapter may be reviewed as other orders, judgments, and decrees.").

3

"Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *Ordahl, LLC v. Lykken*, 2022 ND 193, ¶ 5, 981 N.W.2d 901. Whether the district court properly granted summary judgment is a question of law, reviewed de novo on the record. *Id.*

III

[¶9] Fargo argues the district court erred in holding that H.B. 1340 and N.D.C.C. §§ 40-05.1-06 and 62.1-01-03, as amended, are constitutional on their face and as applied to Fargo's home rule charter and Fargo Municipal Code §§ 20-0403(C)(5)(e) and 20-402(T)(3). Fargo further contends the court erred in holding amended sections 40-05.1-06 and 62.1-01-03 voided sections 20-0403(C)(5)(e) and 20-402(T)(3).

[¶10] This Court has explained:

> The determination whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution. Any doubt about a statute's constitutionality must, when possible, be resolved in favor of its validity. The power to declare a legislative act unconstitutional is one of the highest functions of the courts, and that power must be exercised with great restraint. The presumption of constitutionality is so strong that a statute will not be declared unconstitutional unless its invalidity is, in the court's judgment, beyond a reasonable doubt. The party challenging the constitutionality of a statute has the burden of proving its constitutional infirmity.

*Simons v. State, Dep't of Hum. Servs.*, 2011 ND 190, ¶ 23, 803 N.W.2d 587 (cleaned up).

[¶11] "Challenges to the constitutionality of a statute may be 'facial' challenges or 'as-applied' challenges." *State v. Anderson*, 2022 ND 144, ¶ 7, 977 N.W.2d 736. "A claim that a statute on its face violates the constitution is a claim that the Legislative Assembly exceeded a constitutional limitation in enacting it, and the practical result of a judgment declaring a statute unconstitutional is to treat it 'as if it never were enacted.'" *SCS Carbon Transp. LLC v. Malloy*, 2024 ND 109, ¶ 7, 7 N.W.3d 268 (quoting *Anderson*, at ¶ 7). "An 'as-applied' challenge, on the other hand, is a claim that the constitution was violated by the application of a statute in a particular case." *Id.* at ¶ 8. "Generally, a party may only challenge the constitutionality of a statute as applied to that party." *Id.* (quoting *Anderson*, at ¶ 7).

[¶12] "[W]hen both an as-applied challenge and a facial challenge are raised, we generally first consider the narrower as-applied challenge." *SCS Carbon Transp.*, 2024 ND 109, ¶ 8. "As a general rule a court will inquire into the constitutionality of a statute only to the extent required by the case before it and will not anticipate a question of constitutional law in advance of the necessity of deciding it, and will not formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Anderson*, 2022 ND 144, ¶ 11 (quoting *State v. King*, 355 N.W.2d 807, 809 (N.D. 1984)); *see also Sorum v. State*, 2020 ND 175, ¶ 21, 947 N.W.2d 382 (stating "[a] facial challenge to a statute presents a higher bar than an as-applied challenge"); *State v. Morris*, 331 N.W.2d 48, 58 (N.D. 1983) ("If the statute as applied to [appellant] is constitutional, he will not be heard to say that it is unconstitutional as applied to others."). Thus, if this Court concludes a statute's application is constitutional "as applied" in a case, our analysis need not go further because the statute is necessarily constitutional on its face.

A

[¶13] Fargo argues H.B. 1340 is unconstitutional because it violates the plain language of article VII of the North Dakota Constitution and its intent to give "maximum self-governance" to home rule cities.

5

[¶14] "When interpreting constitutional provisions, 'we apply general principles of statutory construction.'" *Sorum*, 2020 ND 175, ¶ 19 (quoting *State ex rel. Heitkamp v. Hagerty*, 1998 ND 122, ¶ 13, 580 N.W.2d 139). Our framework to construe constitutional provisions is well-established:

> We aim to give effect to the intent and purpose of the people who adopted the constitutional provision. We determine the intent and purpose of a constitutional provision, if possible, from the language itself. In interpreting clauses in a constitution we must presume that words have been employed in their natural and ordinary meaning.
>
> A constitution must be construed in the light of contemporaneous history—of conditions existing at and prior to its adoption. By no other mode of construction can the intent of its framers be determined and their purpose given force and effect. Ultimately, our duty is to reconcile statutes with the constitution when that can be done without doing violence to the language of either.

*Sorum*, at ¶¶ 19-20 (cleaned up).

[¶15] Article VII, section 1 of the North Dakota Constitution provides "[t]he purpose of [article VII] is to provide for maximum local self-government by all political subdivisions with a minimum duplication of functions." Section 2 of article VII provides: "The legislative assembly shall provide by law for the establishment and the government of all political subdivisions. Each political subdivision shall have and exercise *such powers as provided by law*." N.D. Const. art. VII, § 2 (emphasis added). Section 6 of article VII further directs the legislature to "*provide by law* for the establishment and exercise of home rule in counties and cities." N.D. Const. art. VII, § 6 (emphasis added). These constitutional sections are not self-executing because they require the legislature to act to create and empower home rule cities. *Compare Timm v. Schoenwald*, 400 N.W.2d 260, 265 (N.D. 1987) (concluding N.D. Const. art. IV, § 12[1] is "not self-executing because it sets forth a general objective permitting legislative-election

---

[1] Article IV, § 12, N.D. Const., provides in part: "Each house is the judge of the qualifications of its members, but election contests are subject to judicial review *as provided by law*." (Emphasis added.)

contests to be subject to judicial review as provided by law without establishing specific rules to accomplish that objective"); *State ex rel. Agnew v. Schneider*, 253 N.W.2d 184, 187 (N.D. 1977) (noting the Constitution includes several clauses with the phrase "as provided by law" and that "this phrase fundamentally means that the subject matter which this phrase modifies is not 'locked' into the Constitution but may be dealt with by the Legislature as it deems appropriate"); *State ex rel. Vogel v. Garaas*, 261 N.W.2d 914, 918-19 (N.D. 1978) (concluding N.D. Const. art. IV, § 97[2] "is non-self-executing" and "is inoperative until a judicial nominating committee is established by law to supply a list of candidates from which the Governor can choose an appointee"); *State ex rel. Ohlquist v. Swan*, 44 N.W. 492, 496 (N.D. 1890) (holding former N.D. Const. art. XX, § 217[3] was non-self-executing and that it remained dormant until the appropriate legislation was enacted), *with Haugen v. Jaeger*, 2020 ND 177, ¶ 6, 948 N.W.2d 1 (stating the provisions of article III[4] are self-executing and mandatory).

[¶16] The legislature provided for home rule cities by enacting N.D.C.C. ch. 40-05.1. Under N.D.C.C. § 40-05.1-05, a validly enacted home rule "charter and the ordinances made pursuant to the charter in such matters supersede within the territorial limits and other jurisdiction of the city any law of the state in conflict with the charter and ordinances and must be liberally construed for such purposes." Section 40-05.1-05 therefore authorizes home rule cities to enact ordinances that conflict with and supersede state laws. *Klug v. City of Minot*, 2011 ND 67, ¶ 8, 795 N.W.2d 906; *City of Minot v. Rudolph*, 2008 ND 231, ¶ 5, 758

---

[2] Article IV, § 97, N.D. Const., now article VI, § 13, provided: "A judicial nominating committee must be *established by law*." (Emphasis added.)

[3] Article XX, § 217, N.D. Const., provided: "The legislative assembly *shall by law prescribe* regulations for the enforcement of the provisions of this article, and shall thereby provide suitable penalties for the violation thereof." (Emphasis added.)

[4] Article III, § 1, N.D. Const., provides "the people reserve the power to propose and enact laws by the initiative," and that the "article is self-executing and all of its provisions are mandatory. Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair these powers").

N.W.2d 731. However, a home rule city does not have unlimited authority to enact conflicting or superseding ordinances under section 40-05.1-05.

[¶17] As this Court explained, "a home rule city's power to enact ordinances that supersede state law is not without limitation, because a home rule city's powers must be based upon statutory provisions." *Sauby v. City of Fargo*, 2008 ND 60, ¶ 6, 747 N.W.2d 65; *see also City of Fargo v. Malme*, 2007 ND 137, ¶ 10, 737 N.W.2d 390 (same). "It is axiomatic that '[c]ities are creatures of statute and possess only those powers and authorities granted by statute or necessarily implied from an express statutory grant.'" *Sauby*, at ¶ 6 (quoting *City of Bismarck v. Fettig*, 1999 ND 193, ¶ 4, 601 N.W.2d 247). "This Court has held *the supersession provision in N.D.C.C. § 40-05.1-05 applies only to those powers enumerated in N.D.C.C. § 40-05.1-06*, and those powers must also be included in the charter and be implemented by ordinance." *Id.* (emphasis added); *see also Malme*, at ¶ 11 (same); *Litten v. City of Fargo*, 294 N.W.2d 628, 632 (N.D. 1980) (same).

[¶18] Fargo argues the plain language and intent of article VII, section 1 of the North Dakota Constitution mandates cities have home rule powers to address local issues. Fargo contends the legislature does not have "untethered authority to decide the scope of the powers mandated by Article VII," any statute "encroaching" on a home rule city's power "should be measured in light of the express grant of authority given to home rule cities" by article VII, and nothing in article VII allows the legislature to "'strip away' or remove home rule powers from cities which have enacted home rule charters and utilized their home rule charters to pass ordinances."

[¶19] Article VII, section 1 of the North Dakota Constitution provides the purpose of article VII "is to provide for maximum local self-government by all political subdivisions with a minimum duplication of functions." N.D. Const. art. VII, § 1. Fargo's argument overreads what article VII provides. Article VII does not identify any specific powers provided to home rule cities; rather, it establishes the legislature's constitutional role in creating and defining the powers of home rule cities. *See Garaas,* 261 N.W.2d at 918 (discussing distinction between self-executing and non-self-executing provisions and that a self-executing provision "establishes a sufficient rule by which its purpose can be

8

accomplished without the need of legislation to give it effect. However, a constitutional provision is non-self-executing wherein it merely establishes general objectives, without setting forth rules by which those objectives can be accomplished such that the provision must remain inoperative until appropriate legislation is enacted to give it effect.").

[¶20] Fargo's construction of article VII, section 1 of the North Dakota Constitution does not comport with the article's other specific, unambiguous sections. Under article VII, section 2, the legislature is directed to "provide by law" for the establishment and government of all political subdivisions, and that "[e]ach political subdivision shall have and exercise such powers as provided by law." Likewise, article VII, section 6, directs the legislature to "provide by law for the establishment and exercise of home rule" in cities. Thus, under article VII, the state constitution provides the legislature the express authority both to create and define the powers granted to home rule cities.

[¶21] It necessarily follows that "[c]ities are creatures of statute and possess only those powers and authorities granted by statute or necessarily implied from an express statutory grant." *Sauby*, 2008 ND 60, ¶ 6. This Court has explained "the supersession provision in N.D.C.C. § 40-05.1-05 applies only to those powers enumerated in N.D.C.C. § 40-05.1-06, and those powers must also be included in the charter and be implemented by ordinance." *Id.* By enacting H.B. 1340, the legislature specifically subjected a home rule city's powers enumerated in N.D.C.C. § 40-05.1-06(12) and (14) to the limitations on all political subdivisions' authority relating to firearms and ammunition, as provided in N.D.C.C. § 62.1-01-03. To the extent the legislature by enacting H.B. 1340 removed or limited a home rule city's enumerated power under N.D.C.C. § 40-05.1-06, the supersession provision in N.D.C.C. § 40-05.1-05 does not apply. Through its adoption of N.D.C.C. § 62.1-01-03, the legislature exercised its power to limit the authority of all political subdivisions statewide, including home rule cities and counties, regarding firearms and ammunition.

[¶22] We conclude H.B. 1340 does not violate article VII of the North Dakota Constitution. We hold the legislature's enactment of H.B. 1340 constitutes a valid exercise of its constitutional authority to create political subdivisions and,

specifically, to define the powers of a home rule city. We conclude H.B. 1340, as enacted, is constitutional as applied to Fargo's home rule charter and Fargo Municipal Code §§ 20-0403(C)(5)(e) and 20-402(T)(3). Due to this holding, we need not address Fargo's argument H.B. 1340 and N.D.C.C. §§ 40-05.1-06 and 62.1-01-03, as amended, are facially unconstitutional.

IV

[¶23] Fargo argues H.B. 1340 does not preempt Fargo Municipal Code §§ 20-0403(C)(5)(e) and 20-402(T)(3) because it enacted the ordinances under state law unrestricted by H.B. 1340. Specifically, Fargo contends N.D.C.C. § 40-05.1-06(12) and (14) only expressly prohibit Fargo from enacting gun sale ordinances that define "offenses against private persons and property and the public health, safety, morals, and welfare" and laws that provide for "zoning, planning, and subdivision of public or private property within the city limits." Fargo asserts it adopted the ordinances under N.D.C.C. § 40-05.1-06(10) "to provide for public health, safety, morals, and welfare." It further asserts section 40-05.1-06(10) is not subject to N.D.C.C. § 62.1-01-03.

[¶24] Fargo's argument is misplaced. It is undisputed Fargo Municipal Code §§ 20-0403(C)(5)(e) and 20-402(T)(3) are zoning ordinances. Fargo's assertion the ordinances are not "exclusively" zoning ordinances does not make the ordinances not subject to N.D.C.C. §§ 40-05.1-06(14) and 62.1-01-03(2), as amended by H.B. 1340. Those sections prohibit political subdivisions, including home rule cities, from enacting zoning ordinances "relating to the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition." Section 62.1-01-03(2) provides "[a]ll such existing ordinances are void."

[¶25] Furthermore, N.D.C.C. § 62.1-01-03(1), as amended by H.B. 1340, broadly prohibits political subdivision, including home rule cities, from enacting "*any ordinance* relating to the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition which is more restrictive than state law." (Emphasis added.) "The absence of a state law restriction relating to the purchase, sale, ownership, possession, transfer of

10

ownership, registration, or licensure of firearms and ammunition *may not* be construed to allow a political subdivision, including a home rule city or county, to enact an ordinance restricting the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition." N.D.C.C. § 62.1-01-03(4) (emphasis added). Thus, even if no state law restricts the residential sale of firearms or ammunition, or the residential production of ammunition for sale or resale, a political subdivision, including a home rule city, lacks statutory authority to enact an ordinance "restricting the purchase, sale, ownership, possession, transfer of ownership, registration, or licensure of firearms and ammunition." N.D.C.C. § 62.1-01-03(4).

[¶26] The district court did not err in concluding H.B. 1340 preempts and renders void Fargo Municipal Code §§ 20-0403(C)(5)(e) and 20-402(T)(3).

V

[¶27] We affirm the judgment.

[¶28] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

11