## SCOTT v. SECRETARY OF STATE.

1. CONSTITUTIONAL LAW—MANDAMUS—REFERENDUM—ELECTIONS—REGULARITY OF PETITIONS—PARTIES—ELECTORS.

The interest which electors have in the determination of an important public question entitles them to institute mandamus proceedings requiring the secretary of State to determine whether a petition proposing certain amendments to the Constitution as it now exists, by adding section 12 to article 16, modifying the prohibition of the liquor traffic, conforms to the requirements of section 2, Art. 17, of the Constitution, and, if not, to refuse to proceed further in submitting it to the voters; especially in view of the fact that he was advised by the attorney general to proceed, leaving plaintiffs to their remedy in the courts.

2. SAME—REFERENDUM—RIGHTS OF ELECTORS TO PETITION.

The right of qualified voters of the State to propose amendments to the Constitution by petition can be interfered with neither by the legislature, the courts, nor the officers charged with any duty in the premises; but the right is

to be exercised within the limitations imposed by the Constitution.

3. SAME—DUTIES OF SECRETARY OF STATE—PETITIONS—SUFFI-
CIENCY—FULL TEXT OF AMENDMENT.
    The duty imposed upon the secretary of State by section 2,
    Art. 17, of the Constitution, in regard to petitions for sub-
    mitting to vote amendments to the Constitution, includes
    that of ascertaining that the petition includes the full
    text of the amendment proposed, in addition to being
    signed by not less than ten per cent. of the legal voters of
    the State.

4. SAME—MINISTERIAL DUTY.
    The performance of this duty, while purely a ministerial
    one, may involve something more than doing a prescribed
    thing in a prescribed way.

5. SAME—MANDAMUS—DUTY TO REJECT IMPROPER PETITION.
    As the secretary of State might be compelled by mandamus
    to receive a proper petition, 'so he may be compelled to
    refuse to receive an improper one, since it is his duty to
    reject petitions not conforming to the constitutional man-
    date.

6. SAME—PETITIONS—IRREGULAR ON FACE—DUTY TO REJECT.
    A petition proposing certain amendments to the Constitu-
    tion by adding section 12 to article 16, referring to a cer-
    tain law which it is proposed "shall be in force and effect,"
    as modified by certain exceptions, but not containing the
    full text of the proposed amendments, is not, on its face,
    in conformity with the requirements of section 2, article
    17, of the Constitution, and mandamus will issue requir-
    ing the secretary of State to refrain from proceeding to
    submit such amendments to the voters.

7. SAME—PETITIONS—REGULAR ON FACE—QUESTION OF FACT.
    Whether the petition in question contains the full text of the
    proposed amendments is a question of fact.

8. SAME—REJECTION OF PART—DISCRETION.
    Where the proposed amendment is in effect to revive a re-
    pealed statute, except certain sections, the secretary of
    State may not reject one or more of the proposed sections,
    since he is without discretion in the premises.

9. STATUTES—EFFECT OF REPEAL OF REPEALING STATUTE.
    In this State the repeal of a repealing statute does not re-
    vive the statute repealed. 1 Comp. Laws 1915, § 65.

Mandamus by Richard H. Scott and others to compel Coleman C. Vaughan, secretary of State, to refrain from submitting certain proposed amendments to the Constitution to the electors at the general election in November. Charles W. Norton and others were by consent allowed to intervene and answer the petition and to be heard in argument. Submitted August 6, 1918. (Calendar No. 28,471.) Writ granted September 5, 1918.

*C. W. & W. S. Foster* (*Cummins & Nichols,* of counsel), for plaintiffs.

*Alex. J. Groesbeck,* Attorney General, and *Leland W. Carr,* Assistant Attorney General, for defendant.

*Warner & Raudabaugh* (*Allan P. Cox,* of counsel), for interveners.

Article 16 of the Constitution of Michigan is entitled "Miscellaneous Provisions." Section 11 of the article, added to the Constitution in 1916, operative since April 30, 1918, reads as follows:

"The manufacture, sale, keeping for sale, giving away, bartering or furnishing of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, except for medicinal, mechanical, chemical, scientific or sacramental purposes shall be after April thirty, nineteen hundred eighteen, prohibited in the State forever. The legislature shall by law provide regulations for the sale of such liquors for medicinal, mechanical, chemical, scientific and sacramental purposes."

Petitions have been circulated in the State, signed and filed with the secretary of State, which are in the following form:

"Petition to so amend the Constitution of the State of Michigan as to permit, regulate and license the manufacture, sale, keeping for sale, giving away, bartering or furnishing of natural wines, wines of natural carbonization, cider, beer, porter and ale.

"To the Secretary of State,

"Lansing, Michigan.

"We, the undersigned qualified electors of the State of Michigan, and being residents of the township of
.................................................or city of
...................in the county of................
under authority of section 2 of article 17 of the Constitution, hereby respectfully petition for an amendment to article 16 of the Constitution by amending section 11 thereof, and adding thereto five new sections to be known as sections 12, 13, 14, 15 and 16.

"Said proposed amendment to section 11 to read as follows:

" 'Section 11. The manufacture, sale, keeping for sale, giving away, bartering or furnishing of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, except as hereinafter specified and except for medicinal, mechanical, chemical, scientific or sacramental purposes, shall be, after April 30, 1918, prohibited in the state forever. This amendment shall not be construed to prohibit the manufacture, sale, keeping for sale, giving away, bartering or furnishing of natural wines, wines of natural carbonization, cider, beer, porter and ale.'

"Said proposed added sections to read as follows:

" 'Section 12. Act No. 313, Public Acts of 1887, as amended and in force May 1, 1916, shall be in force and effect except as herein (Article XVI) modified.

" 'Section 13. The circuit judge or judges in their respective circuits shall act on all applications for licenses upon petitions signed by twenty-five qualified voters of the organized township (meaning thereby all that part of a township outside the limits of an incorporated village or city located partly or wholly therein) incorporated village or incorporated city where the license is applied for and may grant the same, unless it be made to appear by a vote of such township, village or city that a majority of the voters of such township, village or city are opposed to the issuance of licenses therein, and shall grant the same if it be made to appear that a majority of the voters of such township, village or city are in favor of the issuing of licenses therein.

" 'Section 14. No license, except a manufacturers' license, shall be granted to do business in a residence section or nearer than four hundred feet to a school house or church except in business sections.

" 'SECTION 15. No more than one retail license in any organized township (meaning thereby all that part of a township outside the limits of an incorporated village or city located partly or wholly therein), incorporated village or incorporated city shall be granted for each one thousand population or fraction thereof, and no more than one wholesale license in a township, village or city shall be granted for each ten thousand population or fraction thereof, according to the last United States census.

" 'A retail license shall permit the holder thereof to sell natural wines, wines of natural carbonization, cider, beer, porter and ale by the drink and in quantities of three gallons or less.

" 'A wholesale license shall permit the holder thereof to sell natural wines, wines of natural carbonization, cider, beer, porter and ale in quantities of three gallons or more.

" 'Any bond provided for in Act No. 313, Public Acts of 1887, as amended and in force May 1, 1916, may, within the discretion of the judge or judges granting licenses, be furnished by any surety company authorized to do business within this State.

" 'A holder of a license shall be ineligible for any elective or appointive public office, and the incumbent of any elective or appointive public office shall be ineligible for a license.

" 'SECTION 16. The annual license fee shall be seven hundred fifty dollars for each license, and shall be apportioned as follows:   Two hundred fifty dollars to the township, village or city for which such license is granted, two hundred fifty dollars to the county and two hundred fifty dollars to the general fund of the State to be turned over to the general highway fund for the construction and maintenance of good roads; except that in the Upper Peninsula five hundred dollars shall go to the township, village or city for which such license is granted and two hundred fifty dollars to the general highway fund of the State, for good roads.' "

Before they were filed, plaintiffs requested the secretary of State not to file them—to refuse to do so—and to reject them for the reason that they did not include the full text of the proposed amendment as is required by article 17, section 2, of the Constitution, which reads:

"Amendments may also be proposed to this Constitution by petition of the qualified voters of this State. Every such petition shall include the full text of the amendment so proposed, and be signed by not less than

ten per cent. of the legal voters of the State. Initiative petitions proposing an amendment to this Constitution shall be filed with the secretary of State at least four months before the election at which such proposed amendment is to be voted upon. Upon receipt of such petition by the secretary of State he shall canvass the same to ascertain if such petition has been signed by the requisite number of qualified electors, and if the same has been so signed, the proposed amendment shall be submitted to the electors at the next regular election at which any State officer is to be elected. Any constitutional amendment initiated by the people as herein provided shall take effect and become a part of the Constitution if the same shall be approved by a majority of the electors voting thereon and not otherwise. Every amendment shall take effect thirty days after the election at which it is approved. The total number of votes cast for governor at the regular election last preceding the filing of any petition proposing an amendment to the Constitution, shall be the basis upon which the number of legal voters necessary to sign such a petition shall be computed. The secretary of State shall submit all proposed amendments to the Constitution initiated by the people for adoption or rejection in compliance herewith. The petition shall consist of sheets in such form and having printed or written at the top thereof such heading as shall be designated or prescribed by the secretary of State. Such petition shall be signed by qualified voters in person only with the residence address of such persons and the date of signing the same. To each of such petitions, which may consist of one or more sheets, shall be attached the affidavit of the elector circulating the same, stating that each signature thereto is the genuine signature of the person signing the same, and that to the best knowledge and belief of the affiant each person signing the petition was at the time of signing a qualified elector. Such petition so verified shall be *prima facie* evidence that the signatures thereon are genuine, and that the persons signing the same are qualified electors. The text of all amendments to be submitted shall be published as constitutional amendments are now required to be published."

This request was referred by the secretary of State to the attorney general.  Plaintiffs requested the attorney general to advise the secretary of State that for the reason asserted he ought to refuse to file said petitions.  The attorney general, in a written communication, advised the secretary of State as follows:

"July 3, 1918.

"HON. COLEMAN C. VAUGHAN,
    "Secretary of State,
        "Lansing, Michigan.
"*Dear Sir:*
    "I have before me your letter of the 2nd instant and note that petitions have been presented to you in accordance with section two of article 17 of the Constitution, requesting the submission to the voters at the November election of a proposed amendment with reference to the manufacture and sale of wine and beer. You state that some question has been raised as to the acceptance of said petitions and the submission of the proposed amendment.

    "It is proposed to change section eleven of article 16 and to add five new sections thereto.  The first of the added sections refers to Act No. 313 of the Public Acts of 1887, and declares that the same as amended and in force May 1, 1916, shall be in force and effect except as modified by the Constitution.  The objections that have been presented are directed against this section, it being claimed that the attempt to incorporate by reference is prohibited by the constitutional clause governing the matter.  The question of legislating under the guise of a constitutional amendment is also at issue.

    "These propositions have never been passed on by the courts in this State and the decisions in other States cannot, in my opinion, be regarded as conclusive, inasmuch as the constitutional provisions involved are different.  The Supreme Court, in the case of *Thompson* v. *Secretary of State*, 192 Mich. 512, in passing upon a situation arising under the referendum clause of the Constitution, declared that the duties of the secretary of State in the premises were purely ministerial.  The same rule must, I believe, apply with reference to your duties in connection with the sub-

mission of constitutional amendments proposed by initiatory petitions. It scarcely seems to me, therefore, that you should undertake to pass upon the legality of a proposed amendment when the questions involved in the determination have never been settled by our Supreme Court.

"In the instant case the matter is one that can be submitted to the court without delay or any appreciable expense, and a decision obtained that will remove any doubt as to your duty in the premises and as to the legality of the amendment. There can be no difference of opinion upon the proposition that an authoritative determination should be had as soon as possible in order the electors of the State and officials concerned may be guided thereby. In my opinion, therefore, a proceeding of the nature suggested should be brought as soon as possible by the parties who have presented the objections, so that the issues may be disposed of in an amicable suit.

"This department will stand ready to co-operate in the submission of the case in order that its disposition may be facilitated, and have so advised the attorneys for the parties interested in the objections.

"Respectfully yours,
"ALEX J. GROESBECK,
"Attorney General."

Thereupon the petitions were duly filed.

Plaintiffs describe themselves as citizens, residents, electors and taxpayers of the State and officers and directors of an association known as the Anti-Saloon League of Michigan, interested, individually and as representatives of the membership of the said league and of many citizens, in

"all legislation, constitutional and statutory, affecting the sale or nonsale and the control and regulation of intoxicating liquors in the State of Michigan, and in its due administration and enforcement."

Setting up the facts already herein stated, they petition this court for an order directed to the secretary of State, commanding him to strike from the files and records of his office the said petitions, to refrain from

publishing and printing the said proposed amendment or any of it, to refrain from submitting it for adoption or rejection at the next regular election.

An order to show cause having been made and served, the secretary of State, defendant, has answered the said petition of plaintiffs, admitting the facts therein set up, including the interest of plaintiffs, stating that in action so far taken he has been guided by the advice of the attorney general, asserting that he has no discretion in the premises, and, as to his duties, submitting:

"In answer to the ninth and tenth paragraphs of the petition it is denied that respondent has in any way acted in contravention of the duties imposed on him by law. On the contrary it is insisted that respondent has acted in strict accordance with the direction of the Constitution and of the statutes. The duties of the secretary of State in the premises are wholly ministerial, no power of judicial inquiry whatsoever is vested in him and therefore, upon presentation to him of the petitions aforesaid under section two of article 17, in proper form and signed by a sufficient number of electors, it was his duty to receive and file the same. Unless otherwise directed it will be the duty of respondent to submit the said proposed amendment to the electors of the State at the next general election.

"Respondent believes and so states that it is not competent or proper for him as secretary of State to construe or attempt to construe ambiguous provisions of any proposed amendment, or to adjudicate or attempt to adjudicate disputed questions of law. Rather, it has been and now is the position of respondent that any such question or questions, or disputed construction, should be submitted to the court for determination by any party or parties interested therein. In the instant case such submission would, without question, have been sought regardless of the position taken by respondent; and respondent believes that a final and authoritative determination by this court is greatly to be desired in order that the electors of the State, and officials charged with the performance of

duties under the election law, including this respondent, may be fully advised as to their legal duties.

"Wherefore, it is denied that the petitioners are entitled to the writ of mandamus sought; and the judgment of the court as to respondent's duty in the premises is respectfully prayed."

Describing themselves as a campaign committee appointed by the president of the Michigan State Hotel Association,

"for the purpose of assisting and carrying on a campaign with the object in view of having the constitutional amendment in relation to the sale of cider, wine and beer, adopted by the people of the State of Michigan,"

Messrs. Charles W. Norton, Frank W. Harriman, George Fulwell and William J. Chittenden have asked for and been granted leave to answer the plaintiffs' petition and to be heard, the attorneys for plaintiffs and the attorney general, by stipulation, having consented thereto. The answer filed by these gentlemen denies none of the facts set out in plaintiffs' petition, admits the interest of plaintiffs, and sets up as an additional fact that the proposed amendment was presented to the secretary of State in February, 1918, with a request that he designate the form of sheets to be used in said petition and of the heading to be written or printed thereon, which he, the said secretary of State, did on March 8, 1918; that if the secretary of State has any right or authority to exercise any discretion in that behalf he then had opportunity to exercise it "as to the legality of the proposed amendment," and it is now too late for others to raise the question and for the courts to undo what has been done. The answer asserts that the duties of the secretary of State in the premises are ministerial, and that he has no authority to pass upon the form or substance of an amendment to be submitted, and that inasmuch as a

sufficient number have signed said petition it is his duty to submit the proposed amendment to the electors; that there is no unperformed legal duty and the plaintiffs seek to impose upon him the duty to judicially determine whether or not the proposed amendment "is in accordance with the Constitution."

Upon the said petition and answers the matter has been submitted to the court. For defendant secretary of State it is said in the brief of the attorney general that the question involved is whether it can be said on the face of the petitions it appeared that the full text of the amendment was not set out.

"Under the facts here is such determination ministerial or judicial? If judicial, it is beyond respondent's power. If ministerial the duty rested upon respondent to determine the fact correctly. If he has erred in this it lies with the court to correct him."

Referring to various definitions of judicial and ministerial acts and duties and the difference between them, no opinion is expressed by the learned attorney general beyond the one indicated in his letter to the secretary of State above referred to.

For interveners two briefs have been filed by different counsel. In one of the briefs it is said there are two questions raised,

(1) Do the petitions comply with the constitutional requirement that they shall include the full text of the proposed amendment?

(2) If not, may the secretary of State be compelled by mandamus to strike said petitions from his records and refrain from taking any steps in reference to submitting said proposed amendment to a vote of the electors?

It is conceded that if section 12 of the proposed amendment as written would by its terms make that part and portion of the Public Acts of Michigan a part and portion of the Constitution, if the same were adopted by a vote of the people, then

"said section is not in accordance or in keeping with the constitutional requirements, in this that it does not contain full text of the proposed amendment."

But it is the opinion of counsel that the effect of section 12 is to revive the statute, by direction, and "does not become or form a part of the Constitution of the State." It is contended further that, assuming the secretary of State has the necessary authority, it is his duty to eliminate section 12 from the proposed amendment and allow the remainder of the proposed amendment to stand, the amendment as proposed being complete and workable with this section eliminated. But, it is said, the duty of the secretary of State is ministerial and the question raised cannot be determined in the exercise of merely ministerial powers.

In the other brief for interveners, the right of plaintiffs to institute this proceeding is questioned. Granting their interest, it is said that mandamus is not the proper remedy to invoke, in this connection claiming that the essence of plaintiffs' complaint is that the secretary of State has approved the proposed amendment and mandamus is sought to compel him to undo what is done; that the writ will not lie to compel the doing of an act which defendant is not yet under obligation to perform. It is said the court is without jurisdiction, the people in initiating the proposed amendment having acted in their legislative capacity, in which they are free from judicial interference.

"In the instant case, the proposed amendment on file in the office of the secretary of State, having been approved by him and signed by about 100,000 qualified electors of the State, is simply in its present condition formative legislation, within the jurisdiction of the sovereign people acting in their legislative capacity. If the people do not adopt it, the courts as such will not come into contact with it, but if adopted, it then and then only becomes subject-matter for judicial cognizance.

"The action now here sought by the petitioners is a deadly knife thrust into the very vitals of the initiative and referendum, and spells an attempt to thwart the will of the sovereign people in direct legislation. If the legislature, merely. the agent of the people, cannot be interfered with by the courts, another agent of the people, by what process of reasoning can one. reach the conclusion that the principal, the people, can be interfered with in acting in their legislative capacity by the courts, their agent?

"The duties of the secretary of State in relation to initiated legislation are of the same dignity and character as the duties of the clerks of the house and the senate during legislative sessions, and no more subject to judicial control. The present action against him is a thinly veiled attempt to stifle the proposed amendment and thereby accomplish indirectly that which no court has the power to do directly."

Of the proposed section 12 it is said in part:

"The now proposed amendment, we respectfully but firmly maintain, will, if adopted by the people, not only repeal the present prohibition section of the Constitution in so far as wine, beer, cider and ale are concerned, but will also repeal by implication the laws dealing with these beverages passed by the legislature of 1917. This being the case, we have the situation of the repealing act being repealed which thereby revives the former laws in so far as they are in harmony with the new amendment.

"Section 12, therefore, simply expressly states an intent to revive the former laws, except wherein modified by the amendment. In other words, it simply does expressly what otherwise would be done by implication, as stated in Blackstone. By expressly stating, all doubt is removed as to the intent of the people in adopting the amendment. This is not re-enacting the old statute as claimed by petitioners in their brief. It is, rather, expressly stating the fact that the bar which now makes the Warner-Cramton law inoperative is removed.

"To attempt to deny to the sovereign people the right of having the doctrine of revival applied to legislation initiated and adopted by them directly, and at

the same time apply the doctrine of revival to acts of the legislature is a piece of effrontery that is unequalled in the history of popular government.

"The endeavor on the part of petitioners to prevent the submission of the entire amendment because of their objections to section 12 is flying directly in the face of the elementary rule of statutory construction that if a law is good in part and bad in part, the valid will be kept and the invalid discarded, if the valid part is workable. Who has the temerity to say that the proposed amendment with section 12 eliminated is not workable, as a constitutional provision, which would be supplemented by subsequent legislation? In discussing this latter principle, we do not for a moment concede that section 12 can be legally eliminated, but we simply argue the proposition as an illustration of the unsoundness of the position taken by petitioners.

"What now becomes of petitioners' wail that the full text of the amendment is not contained in section 12? It dissipates into thin air, without leaving even an echo. Emphatically, section 12 contains the full text, for it is simply the express statement of the intent to revive the laws formerly repealed. As an expression of such intent, a fuller, fairer or more complete statement could scarcely be devised. Instead of being there for the purpose of confusing the people or for the purpose of 'constitutional tinkering,' as slurringly remarked by petitioners in their brief, it is there for the express purpose of informing the electors just what the result of the adoption of the amendment will be—nothing is left for conjecture or implication.

"Further, section 12 being a full, free, frank statement of the intent to revive meets the only criticism made by petitioners that is worthy of consideration, viz., that section 12 does not contain the full text of the amendment. In this connection, it is respectfully maintained that as section 12 does contain the full text, it becomes unnecessary to decide whether as an expression of intent section 12 will become effective or not, if adopted, in producing or aiding revival of the former laws."

For plaintiffs it is contended that section 12 does not comply with either the letter or spirit of the con-

stitutional provision for amendments, as, if adopted, it would transplant into the Constitution the statute referred to as amended. Of the contention that the effect of section 12 of the proposed amendment is merely to re-enact or revive a statute, it is said that since May 1, 1918, by force of the Constitution, Act No. 313 of the Public Acts of 1887 and its amendments have stood repealed. It can be revived as a statute or as a part of the Constitution. The legislature cannot revive it until the Constitution has been changed. The people can pass no law which the legislature could not pass. But, assuming that if set out in full in the proposed amendment and the entire amendment adopted at the next general election, the effect would be a revival of the law, the legislature could not thereafter amend or repeal it for the reason that it had become a part of the Constitution.

OSTRANDER, C. J. (*after stating the facts*). Under the circumstances disclosed here, including, of course, the fact that the attorney general advised the filing of the petitions, plaintiffs show such an interest as entitles them to institute this proceeding. *Ayres* v. *Board of State Auditors*, 42 Mich. 422; *Thompson* v. *Secretary of State*, 192 Mich. 512, 522.

Of the right of qualified voters of the State to propose amendments to the Constitution by petition it may be said, generally, that it can be interfered with neither by the legislature, the courts, nor the officers charged with any duty in the premises. But the right is to be exercised in a certain way and according to certain conditions, the limitations upon its exercise, like the reservation of the right itself, being found in the Constitution. The secretary of State is charged with certain duties in this behalf.

"Upon receipt of such petition by the secretary of State he shall canvass the same to ascertain if such

petition has been signed by the requisite number of qualified electors, and if the same has been so signed, the proposed amendment shall be submitted to the electors at the next regular election at which any State officer is to be elected."

*Such petition.* A petition including the full text of the amendment so proposed, signed by not less than ten per cent. of the legal voters of the State. The ascertainment of these facts which are to appear before he is charged with the performance of further duties involves the exercise of no discretion, the performance of none but a ministerial duty. The performance of a purely ministerial duty may involve something more than doing a prescribed thing in a prescribed way. Knowledge of the correlation of facts, the exercise of reason, the application of established principles and rules may be required before performance of a duty is indicated, before the fact upon the existence of which the duty arises can be said to be established. One must appreciate the meaning and effect of what appears upon the face of a petition before he can determine whether, upon its face, it imports one thing or another. As he might be compelled by mandamus to receive a proper petition, so by mandamus he may be compelled to refuse to receive an improper petition, since it is his duty to reject, at least to refuse to take further action concerning, petitions not conforming to the constitutional mandate. The jurisdiction of the court in the premises cannot be doubted, exercised within the limits herein indicated. *Rich* v. *Board of State Canvassers,* 100 Mich. 453; *Livingstone* v. *Wayne Election Commissioners,* 174 Mich. 485; *Thompson* v. *Secretary of State,* 192 Mich. 512, 521, 522.

Does the petition here in question contain the full text of the proposed amendment? This is the single question to be answered, and is a question of fact.

The proposed amendment to the Constitution which is in question here is a single thing. A single subject-matter is involved. Upon the face of the petition an amendment to the Constitution is proposed, a change of the Constitution as it now exists. It is proposed to add section 12 to article 16, to stand as a section of the Constitution. The law to which that section refers, once in force, has now no sanction. The text of the law can be found. It is proposed that it "shall be in force and effect," proposed therefore to enact a law, to give life, legal sanction, to a set of words and phrases, referred to but not set out. And it is proposed further that the matter referred to shall be modified in meaning by language found in sections 13, 14, 15, and 16 of the proposed amendment, each of which is to stand as an amendment of the Constitution. Upon the face of the proposition, it is clear enough that it is designed to make the matter found in the act referred to a part of the Constitution and that the full text of the proposed amendment is not contained in the petition.

An argument supporting this conclusion may be differently stated. Excepting the laws of 1917, passed to make effectual the provision of section 11 of article 16 of the Constitution, there is no law affecting the subject-matter of the proposed amendment. What is the apparent scope of the proposed amendment? Plainly, to permit, what is now forbidden, the manufacture and sale of certain liquors and to regulate such manufacture and sale. Where is the text, where are the words and phrases, constituting the regulatory rules? It is plain that they are not in the proposed amendment.

The idea that the secretary of State may reject one or more of the proposed sections is, of course, based upon the further idea that he has discretion in the

premises and all concerned unite in denying that he has any such power.

The argument that section 12 of the proposed amendment is merely declaratory of a rule of law, that since section 11 of article 16 of the Constitution repealed, or made inoperative, the liquor laws, the proposed amendment of that section will *ipso facto* revive them is essentially unsound. It is not true that in this State the repeal of a repealing statute revives the statute repealed. 1 Comp. Laws 1915, § 65. And, moreover, as a declaration, section 12 leaves repealed a large body of law upon the general subject.

I conclude that it was the duty of the secretary of State to reject the petition, and is now his duty to refuse to proceed further to perform any duty imposed on him by article 17, section 2, of the Constitution in this behalf.

The writ will issue, but no costs are awarded.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.