[File No. 6591.]

BEN C. LARKIN, Respondent, v. JAMES D. GRONNA, as Secretary of State for the State of North Dakota, Appellant.

(285 N. W. 59.)

Opinion filed March 22, 1939.   Rehearing denied April 18, 1939.

236

*A. C. Strutz,* Attorney General, for respondent and appellant.

*James M. Hanley, Jr.,* for petitioner and respondent.

*John F. Sullivan* and *Charles A. Verrel,* amici curiæ.

BURR, J.   In 1932 the petitioner was elected a member of the board of railroad commissioners for a term of six years.

At the primary election held on June 28, 1938, there was submitted by initiative petition, and adopted by the people, a proposed amendment to § 82 of the Constitution, as follows:

"An Act to amend and re-enact § 82 of the Constitution of the State of North Dakota relating to the election of State Officials, and providing for the election on a No-party Ballot of a Tax Commissioner for a term of four years.

"Be It Enacted by the People of the State of North Dakota:

"Section 82 of the Constitution of the State of North Dakota is hereby amended and re-enacted to read as follows:

"There shall be chosen by the qualified electors of the State at the times and places of choosing members of the legislative assembly, a secretary, auditor, treasurer, superintendent of public instruction, commissioner of insurance, three commissioners of railroads, an attorney general, a commissioner of agriculture and labor, and a tax commissioner, who shall have attained the age of twenty-five years and shall have the qualifications of state electors. They shall severally hold their offices at the seat of government for the term of two years and until their successors are elected and duly qualified; but no person shall be eligible for the office of treasurer for more than two consecutive terms; provided, however, the tax commissioner shall hold his office for the term of four years and until his successor is elected and duly qualified.

"The tax commissioner shall be elected on a no-party ballot and he shall be nominated and elected in the manner now provided for the nomination and election of the superintendent of public instruction.

"The first election of a Tax Commissioner shall not occur until the year 1940."

At this primary election the petitioner was nominated to succeed himself for the term beginning January 3, 1939, and re-elected at the general election in November, 1938.

After the state board had canvassed the returns of votes cast at the general election the respondent, who is secretary of state, tendered a certificate showing the petitioner elected for a period of two years. This certificate was refused on the ground that the term was six years, and upon refusal of the respondent to issue a certificate to this effect the petitioner applied to the district court for a writ of mandamus to compel its issuance. The lower court so ordered and respondent appealed.

The respondent bases his refusal upon the grounds that the constitutional amendment adopted in June, 1938, had limited the term of

office to two years; that he is purely a ministerial officer and has no "authority to in any way question the propriety of the measures submitted or their legal sufficiency, other than provided by law. . . . and that until such time as the courts of this state, after judicial review and appropriate proceedings hold the said amendment to § 82 unconstitutional, that your respondent cannot lawfully do the things commanded in the said alternate writ of mandamus, that is to say, cannot lawfully issue a certificate of election to the petitioner in the above entitled proceedings for a term of more than two years."

Under the statutes of this state it is the duty of the state canvassing board to examine the certified abstracts of votes cast for state offices, canvass the returns made, and certify to the secretary of state "what persons have been by the greatest number of votes duly elected to such offices. . . ." Comp. Laws, §§ 1016 to 1019. This officer must then prepare a certificate for each person elected, which certificate, in this case, must show not only that the petitioner was elected to the office of railroad commissioner, but must also specify the term of years of his office. Comp. Laws, § 1023.

This is his duty and he may not ignore this duty simply because some question may arise as to the validity of the amendment adopted. Even if he were acting in a ministerial capacity only, he is sworn to discharge the duties of his office and must pass upon the question for his own action. He did so herein and issued a certificate showing the term of office to be two years, thus in effect holding that the proposed constitutional amendment had been legally adopted.

The petitioner contends:

"1. That the amendment contains more than one subject in violation of § 61 of the Constitution.

"2. That neither the title of the act, nor the ballot title, fairly represent the amendment and the change referring to the Board of Railroad Commissioners is not contained therein.

"3. That the omitted and inserted portions of the amendment were not emphasized upon the ballot in compliance with § 960 of the 1913 Compiled Laws, and were not emphasized in the advertising by the secretary of state in compliance with § 961 of the 1913 Compiled Laws.

"4. That the amendment does not contain the full text thereof in view of the attempt to incorporate into the Constitution a section of the

statutes by reference only in that the amendment provides for the election of a tax commissioner in the manner now provided by statute for the election of the superintendent of public instruction.

"5. That even though the amendment be valid it is not retroactive and does not operate upon the petitioner as he was nominated for a six year term prior to the adoption of the amendment and there was no nomination for any two year term.".

We approach the consideration of this issue having in mind the principles governing popular government. Article 1 of the Constitution is the declaration of rights. Section 2 thereof states: "All political power is inherent in the people. Government is instituted for the protection, security and benefit of the people, and they have a right to alter or reform the same whenever the public good may require." The people of this state are the sole authority in determining whether the proposed change is such as is required by the public good. Unless limited by some provision of the Federal Constitution, or self-limited by provisions in our own Constitution, such as the compact with the United States, or methods of amendment, the people of this state are supreme in determining what their Constitution shall be. They have plenary power, by constitutional amendment, to provide such method of government for the state or any portion thereof as they please, so long as there is no violation of the federal relations. Green v. Frazier, 44 N. D. 395, 176 N. W. 11; People ex rel. Atty. Gen. v. Cassiday, 50 Colo. 503, 117 P. 357.

While the provisions of article 1, by positive direction in § 24, are declared to be "excepted out of the general powers of government and shall forever remain inviolate," this restriction is a limitation on legislation only; it does not hamper the people in amending the Constitution whenever they deem it necessary for the public good, and thus they may amend even article 1 unless prohibited as heretofore stated.

Under the provisions of §§ 202 and 25 of the Constitution there are two methods of amending the constitution of this state—the proposed amendment may be submitted to the people through a resolution adopted by the legislature, or it may be submitted by an initiated petition.

The right to propose amendments to the Constitution is not a legislative power of the general assembly in its ordinary sense, but is vested

in the legislature only by grant of power in the Constitution so that the power, when exercised, must be exercised within the terms of the grant. Chicago v. Reeves, 220 Ill. 274, 77 N. E. 237; State ex rel. Postel v. Marcus, 160 Wis. 354, 152 N. W. 419; State ex rel. Wineman v. Dahl, 6 N. D. 81, 83, 68 N. W. 418, 34 L.R.A. 97, and see also Cooney v. Foote, 142 Ga. 647, 83 S. E. 537, 539, Ann. Cas. 1916B, 1001. This principle governs amendment by initiative petition. When the proceeding is begun by initiative petition, in the exercise of the power of the people, it is the exercise of a political power, and the agencies designated for securing expression of the sovereign will exercise a political function. State ex rel. Byerley v. State Canvassers, 44 N. D. 126, 172 N. W. 80.

When the people decree that proposed legislation or amendments to the Constitution are to be submitted in a certain form and manner, it is the duty of the officials charged with the oversight of the submission to see that these rules are observed. See Dyer v. Hall, 51 N. D. 391, 199 N. W. 754; Preckel v. Byrne, 62 N. D. 356, 243 N. W. 823. In appropriate proceedings they can be enjoined from submitting a measure that fails to comply with requirements. State ex rel. Linde v. Hall, 35. N. D. 34, 159 N. W. 281.

But it must be recognized that there may be a vast difference between compelling the official to observe rules and regulations prior to the submission, and considering the failure to do so *after the people have spoken by their vote.* In other words, it becomes important to determine what rules and regulations are mandatory, what are directory, and the effect of substantial compliance with mandatory requirements.

Another factor which must be noted and which must govern in the determination of this issue is "that every reasonable presumption, both of law and fact, is to be indulged in favor of the validity of an amendment to the Constitution when it is attacked *after its ratification by the people.*" People ex rel. Elder v. Sours, 31 Colo. 369, 74 P. 167, 169, 102 Am. St. Rep. 34. In Sandell v. Omaha, 115 Neb. 861, 215 N. W. 135, the court adopted and approved this rule. See also Lovett v. Ferguson, 10 S. D. 44, 71 N. W. 765.

The people are presumed to know what they want, to have understood the proposition submitted to them in all of its implications, and by

their approval vote to have determined that this amendment is for the public good and expresses the free opinion of a sovereign people.

But the people themselves must follow the constitutional method prescribed. To do otherwise would be revolutionary. State ex rel. Wineman v. Dahl, 6 N. D. 81, 85, 68 N. W. 418, 34 L.R.A. 97. The people, in creating this government, were competent to and did disable themselves from saying whether their Constitution should be changed otherwise than in a particular manner. State ex rel. Postel v. Marcus, 160 Wis. 354, 152 N. W. 419.

But whatever may be the form of submission, it must be remembered that it is merely "a means provided, by which the people may exercise their sovereign right of declaring whether they will change their Constitution or not, thereby establishing the mode in which the government shall be changed, instead of leaving it to unregulated popular impulse. The proposition is presumed to emanate from the people, through their representatives, and is regularly submitted for the action of the whole people. There is nothing in the nature of the submission which should cause the free exercise of it to be obstructed, or that could render it dangerous to the stability of the government; because the measure derives all its vital force from the action of the people at the ballot-box, and there can never be danger in submitting, in an established form, to a free people, the proposition, whether they will change their fundamental law. The means provided for the exercise of their sovereign right of changing their Constitution should receive such a construction as not to trammel the exercise of the right. Difficulties and embarrassments in its exercise are in derogation of the right of free government, which is inherent in the people; and the best security against tumult and revolution is the free and unobstructed privilege to the people of the state to change their Constitution in the mode prescribed by the instrument." Green v. Weller, 32 Miss. 650, 683.

The will of the people is the supreme law. Will is not mere whim and must be expressed orderly. When will is expressed in the manner required, departures from prescribed rules taking place prior to the expression of the will must be grave indeed to set aside the authoritative declaration of the people.

In Re Constitutional Prohibitory Amendment, 24 Kan. 700, 710

(reprint 499, 506), the court, through Justice Brewer, holds: "The two important, vital elements in any constitutional amendment are the assent of two-thirds of the legislature, and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded because by them certainty as to the essentials is secured. But *they are not themselves the essentials.*" See also Hammond v. Clark, 136 Ga. 313, 71 S. E. 479, 38 L.R.A.(N.S.) 77; Mayer v. Adams, 182 Ga. 524, 530, 186 S. E. 420, 424; Board of Liquidation v. Whitney-Central Trust & Sav. Bank, 168 La. 560, 122 So. 850; State ex rel. Hay v. Alderson, 49 Mont. 387, 142 P. 210, 217, Ann. Cas. 1916B, 39; Martien v. Porter, 68 Mont. 450, 219 P. 817, 822; State ex rel. Corry v. Cooney, 70 Mont. 355, 225 P. 1007, 1009; Boyd v. Olcott, 102 Or. 327, 202 P. 431; State ex rel. Postel v. Marcus, 160 Wis. 354, 152 N. W. 419, 432.

With reference to petitioner's first contention—that the proposed amendment is invalid because of noncompliance with § 61 of the Constitution, which provides: "No bill shall embrace more than one subject, which shall be expressed in its title, but a bill which violates this provision shall be invalidated thereby only as to so much thereof as shall not be so expressed," it is sufficient answer to say the section refers to legislative enactments only and is not applicable to constitutional amendments.

The second, third, and fourth contentions of the petitioner are governed by the same principle; but before setting this forth it is necessary to refer to two contentions raised in the briefs.

It is urged by amici curiæ that the incorporation of such statutes in the Constitution refers to the tax commissioner only; that as his office and its tenure are not in issue before the court, we need not pass upon this feature; and that even if the court found such statutory provisions could not be incorporated or referred to, it would affect the tax commissioner only, could be separated from the amendment, and the remaining portion be upheld.

We cannot agree with this contention. It is difficult to see how we could separate an integral part of the amendment and yet say the remainder would stand. The contention is based upon the well-known rule that where a portion of a measure is eliminated and it can be said that the legislature or the people in adopting the measure would have

adopted it even if the contested portion had been eliminated, the remainder of the measure should stand. Such could not be adopted as the rule here. There is enough discovered upon an examination of the proposed amendment to lead reasonable people to believe it would not have been adopted by the people if it did not provide for the election of a tax commissioner and that this was the main purpose in proposing the amendment. In fact, those who claim to be the sponsors of the movement—the "North Dakota Taxpayers' Association"—expressly state in the publicity pamphlet that this measure "Provides for election of a tax commissioner on a no-party ballot for a four-year term. All other state officials, except Judges, for a two-year term." (Publicity Pamphlet, p. 30.) The same association, on page 31 of the Publicity Pamphlet, says that this measure, denominated Measure No. 5, is: "An act amending § 82 of the state Constitution, to provide for the election of a Tax Commissioner on a no-party ballot, for a four-year term." The sponsors stress the election of the tax commissioner. They refer incidentally to the two-year term of all other state officials except judges. We are impelled to believe that in all probability the amendment would not have been submitted to the people nor adopted by them if it had not contained the provision for the tax commissioner. Therefore, even if such rule sought to be applied is applicable to a constitutional amendment, we determine that it cannot be applied here.

In support of his contention petitioner cites § 64 of the Constitution, which provides: "No bill shall be revised or amended, nor the provisions thereof extended or incorporated in any other bill by reference to its title only, but so much thereof as is revised, amended or extended or so incorporated shall be re-enacted and published at length." This section cited, however, has no bearing on the text of a constitutional amendment. It governs legislation and prevents the amendment or revision of an existing statute by incorporating or referring to some other measure by reference to the title only, etc.

Contentions Nos. 2, 3, and 4, dealing with an alleged defective ballot title, failure of the secretary of state to comply with §§ 960 and 961 of the Compiled Laws, and that the amendment proposed did not contain the full text of the measure, are all raised after the election was held and after the people, by their vote, approved the amendment.

The Constitution (§ 202) provides: "Amendments to the Consti-

tution of the state may also be proposed by initiative petition of the electors. . . . All provisions of the Constitution relating to the submission and adoption of measures by initiative petition and on referendum petition, shall apply to the submission and adoption of amendments to the Constitution of the state." These provisions for submission and adoption are set forth in § 25. This § 25 requires: "Such petition shall contain the full text of the measure and shall be filed with the secretary of state. . . . Each petition shall have printed thereon a ballot title which shall fairly represent the subject matter of the measure, . . ." and that "The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the time the ballot is prepared, the secretary of state shall place the measure on the ballot and *no subsequent decision shall invalidate such measure if it is at such election approved by a majority of the votes cast thereon.* If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it."

The Constitution declares it is the duty of the secretary of state to "pass upon each petition." This term "pass upon" has a specific meaning. It means to sit in adjudication, to exercise judgment upon, to determine sufficiency in accordance with the standard set, to weigh and determine the essential facts for and against. Fitzsimmons v. Richardson, T. & Co. 86 Vt. 229, 84 A. 811, 814, intimates that the term "pass upon" means a weighing of and deciding on material facts necessary to establish a case. Kennebec Housing Co. v. Barton, 122 Me. 374, 120 A. 56, 57, has the same intimation—that to "pass upon" issues means to weigh the evidence for and against and decide thereon.

The duty of the secretary of state to thus "pass upon each petition" is not confined to but one feature of the petition, such as the number of signers. There are other features which he must pass upon. There are certain constitutional requirements in form which each petition must possess and it is the duty of the secretary of state to examine the petition to determine whether the petition possesses these requirements. The fact one may conclude that the sufficiency of the number of signers

is the most common form of attack does not say that this is the only feature which must be examined by the secretary of state. It is his duty to see whether it has a title, whether the ballot title fairly represents the subject matter of the measure, and whether the petition contains the full text of the measure. The petition must have an enacting clause and it is the duty of the secretary of state to examine the measure for the purpose of seeing whether there is one and whether it conforms to the requirements. The Constitution provides that if the secretary of state determines the petition is insufficient in *any* of the particulars required in order to have it placed upon the ballot, it is his duty to so notify the committee and allow the committee time for correction or amendment.

In State ex rel. Laird v. Hall, 49 N. D. 11, 186 N. W. 284, the court was considering article 33 of the Constitution, dealing with recall of public officials. This article provides for the filing with the officer with whom a petition for nomination in the primary election is filed (in the case involved, the secretary of state) of a petition signed by a certain percentage of the qualified electors, and contains the provision of § 25 that the article shall be self-executing, treated as mandatory, and that laws may be enacted to facilitate its operation, etc. In passing upon the issue presented in the case cited we said, referring to the duties of the secretary of state concerning initiative and referendum petitions, that the duty was imposed upon him to pass upon each petition; his decision in regard to any such petition is made subject to review by the court; that this pointed out "a method for the secretary of state exercising a discretion upon initiative and referendum petitions that are foundational for an election thereupon." We pointed out that there existed two methods for questioning the sufficiency of recall petitions prior to the election—one through objections before the secretary of state as to the sufficiency of the petition and the other by proceedings in court to review or control his acts. In this decision it is shown:

"No objection of any kind, nor any appeal, was made to the secretary of state concerning the sufficiency of the recall petitions. No action or proceeding of any kind was taken prior to the election, in any court, to question the sufficiency of such petitions. Without objection or the taking of any proceedings, the secretary of state was permitted to exercise his discretion, to call and to hold the election. It may be

conceded, for purposes of this application, that the petition alleges a cause of action to enjoin the calling of a recall election and for a review of the discretion exercised by the secretary of state, if such cause of action had been presented prior to the time of such election, and, further, that the recall petitions must be signed by 30 per cent of the qualified electors who voted at the preceding election for the office of governor. The recall petitions, on their face, purport to be so signed. It may be further conceded that the recall constitutional amendment itself prescribes its mandatory character and the rule of strict compliance to be applied; that, further, it was not intended, through this constitutional amendment, to cast aside all safeguards in election proceedings.

"However, the pertinent inquiry, now, is whether, at this time, after the secretary of state has exercised his discretion, without any objection or any appeal to the courts, and after a recall election has been held, this court should invalidate the election and restrain the state canvassing board in the performance of its duties enjoined by law. The petitioners assert that a valid election cannot exist based upon invalid petitions; that the existence of sufficient petitions for a recall are conditions precedent to the calling or holding of a valid special election and any election not so called and held is necessarily void. It remains to be seen whether this premise, asserted by the petitioners, is correct, based upon the present application and the constitutional amendment concerned."

See also State ex rel. Dinger v. Wyndmere School Dist. 55 N. D. 767, 215 N. W. 267.

In State ex rel. Laird v. Hall cited, there are many features analogous to the case at bar. No objection of any kind, nor any appeal, was made to the secretary of state concerning the sufficiency of the initiative petition submitting the proposed amendment, and he was permitted to exercise his discretion to call and hold the election.

In State ex rel. Laird v. Hall we cite State ex rel. Little v. Langlie, 5 N. D. 594, 600, 67 N. W. 958, 32 L.R.A. 723, to the effect that after an election had been held and a sufficient vote had been cast in favor of a place to work a change of the county seat to such place, the question whether the petition had upon it the requisite number of names was not open to judicial investigation; that while a petition was un-

doubtedly necessary, yet the question lay deeper than that; that the pregnant inquiry was what body was to settle the matter finally; that after an election had been held the court was impelled to the conclusion that the decision of the board with whom the petition was filed was final.

Section 25 of the Constitution provides: "The word 'measure' as used herein shall include any law or amendment thereto, resolution, legislative proposal or enactment of any character," and, as heretofore shown, § 202 of the Constitution makes the provisions of this § 25 applicable to proposed amendments to the Constitution. Therefore, such amendments are included within the meaning of the term "measure."

When the purpose is to amend the Constitution by means of the method prescribed in § 25 of the Constitution, we are governed by the provisions of that section dealing with methods, form, and adoption. It is true in discharging his duties the secretary of state performs a ministerial duty (State ex rel. Linde v. Hall, 35 N. D. 34, 159 N. W. 281), but, as pointed out in Scott v. Secretary of State, 202 Mich. 629, 168 N. W. 709, the performance of this duty, "however, involves more than the doing of a prescribed thing in a prescribed way, and requires knowledge of correlation of facts, the exercise of reason, the application of established principles, and an appreciation of the meaning and effect of what appears on face of petition." Thus, he is required at times to "pass upon" matters where judgment is involved and provision is made for the review of his decision.

In Dyer v. Hall, 51 N. D. 391, 199 N. W. 754, supra, the secretary of state had examined the petition and found it did not contain the portions of the statutes sought to be incorporated. It merely referred to them, and so he rejected the petition. This court held that this was within his province and duty, that the petition did not contain the full text of the measure and therefore refused to issue a writ of mandamus requiring him to place the proposition upon the ballot. In other words, before the election the court reviewed the decision of the secretary of state upon a matter which it was his duty to decide. If an erroneous decision on this point is such a matter as may be reviewed at any time by anyone who claims his interests are affected, then it would be such a decision by the secretary of state that he would not be entitled to make. It would be one on a par with the issue involved in Preckel v.

Byrne, 62 N. D. 634, 244 N. W. 781,—it would be a matter of substance. In this Dyer Case we held that this was a matter which was within the province of the secretary of state to determine. Being within his province, his decision thereon is governed by the provisions of § 25 of the Constitution.

When the petition initiating this amendment to the Constitution was presented to the secretary of state, it was his duty, as in the Dyer Case, to examine the petition and to determine whether it contained the full text of the measure and had a proper ballot title. He did so, decided that it did, and placed the same upon the ballot. At the general election the proposed amendment was adopted.

The secretary of state was governed by the Constitution as set forth in § 25. All the provisions of this section are mandatory. They are mandatory upon the court as well as upon the people and the secretary of state. The decision of the secretary of state was subject to review by this court. It is the clear import of § 25 that all such decisions are final unless reversed by the court prior to the election. If the decision of the secretary of state as to the sufficiency of such petition is attacked and being reviewed prior to the election, but no decision rendered until thereafter, a subsequent decision cannot invalidate the measure if approved. So says the Constitution. It would be an anomalous situation if the decision of the secretary of state could be reviewed after the election simply because there was no attack upon it before the election in view of the fact that if there is an attack before the election the measure if adopted is not invalidated unless his decision is reviewed and decided prior to the election. The time to review the decision of the secretary of state in passing upon the objections Nos. 2, 3, and 4 of the petitioner's contentions has long since passed. We no longer possess the power to review, and it is useless for this court to give an advisory opinion on the question involved even if such were permissible.

The last point urged by petitioner is that even though this constitutional amendment be valid, it cannot apply to him because at the time of his nomination the term of railroad commissioner was six years; that this was the term up to the time of the adoption of the amendment and the term for which he was nominated; and that when elected he was elected to an office which at the time the amendment was adopted carried a term of six years. He therefore claims that to hold his term of

office to be but two years is to give a retrospective effect to the constitutional amendment and that the case of State ex rel. Stutsman v. Light, 68 N. D. 513, 281 N. W. 777, upholds this contention.

In this case cited we passed upon this specific amendment and held that "shortening the term of office of a constitutional officer will not be held retrospective in its operation unless the terms of the amendment clearly disclose an intention to make it so," and that no intention to shorten the terms of the railroad commissioners who had two and four more years to serve respectively was disclosed.

When the Constitution was adopted it made provision for the election of three railroad commissioners, each to serve a term of two years. The consequence was that every two years a new board of railroad commissioners was chosen. At the general election in 1926, § 82 was amended by providing that the railroad commissioners elected that year should hold office for two years, four years, and six years respectively, depending upon the number of votes each received, and that thereafter one railroad commissioner would be elected every two years. This remained the rule for railroad commissioners until the adoption of this new amendment in June, 1938. The petitioner was the one whose successor was to be chosen in 1938. In the Light Case we determined that this amendment was not retrospective with reference to the others, and, therefore, the defendant Light, the county auditor of Oliver county, should be restrained from placing upon the ballot the direction to vote for three railroad commissioners, as the term of office of the others had not expired.

At the primary election the political party to which the petitioner belonged nominated but one candidate for railroad commissioner, the petitioner, to serve for the term of six years. If this proposed amendment had not been adopted, he would have been elected in November, 1938, for a term of six years; but at the time of the general election the term had been shortened to two years.

The Light Case has no bearing on the issue here. The situation is entirely different. The petitioner's term was expiring. The retrospective feature could not apply to him in any event. It is immaterial there was no nomination for a two-year term as petitioner claims in his fifth point. He was a candidate for commissioner of railroads for the ensuing term, and that meant commissioner of railroads with the

term as it existed at the time of the election in November. That is the office to which he was elected. In the Light Case we cited the case of People ex rel. McMinn v. Haskell, 5 Cal. 357, where it was set forth that an election held prior to the expiration of the term of the incumbent, who had been elected for a two-year term, did not affect the incumbent so far as the remainder of his term was concerned, but that his successor took office at the expiration of the term for which the incumbent had been elected and for the length of the new term. In other words, that a change of term from two years to one year did not affect the incumbent, that his successor took office at the expiration of the incumbent's term for the term that had been changed to one year, and so the successor was elected for one year.

Here the petitioner was the incumbent, and his term of office expired in January, 1939. A successor was to be elected to succeed him and for the ensuing term—whatever the length of the term was. Had his opponent been his successor, it could not be successfully maintained that the opponent had been elected for a six-year term. That the petitioner succeeded himself does not change the situation. He was elected for a two-year term.

The amendment is not subject to the attacks made, and therefore the order for the issuance of the writ is reversed.

NUESSLE, Ch. J., and CHRISTIANSON, J., and ENGLERT, Dist. J., concur.

BURKE, J., being disqualified did not participate; HON. M. J. ENGLERT, Judge of the First Judicial District, sitting in his stead.

MORRIS, J. (dissenting). Section 202 of the Constitution of North Dakota adopts the initiative as one of two methods of amending the Constitution. After providing for amendments by legislative proposal this section goes on to say, "Amendments to the Constitution of the state may also be proposed by initiative petition of the electors; such petition shall be signed by twenty thousand of the electors at large and shall be filed with the secretary of state at least one hundred twenty days prior to the election at which they are to be voted upon, and any amendment or amendments so proposed shall be submitted to the electors and

shall become a part of the Constitution, if a majority of the votes cast thereon are affirmative. All provisions of the Constitution relating to the submission and adoption of measures by initiative petition and on referendum petition shall apply to the submission and adoption of amendments to the Constitution of the state." Thus it is specifically said that the provisions of the Constitution relative to the enactment of legislation by initiative apply when the amendment of the Constitution is sought through the medium of the initiative. The initiative and referendum provisions relating to legislation are found in § 25 wherein the people reserve the power to propose measures and to enact and reject them at the polls. "This section shall be self-executing and all of its provisions shall be treated as mandatory." Section 25 provides, in considerable detail, the method by which the power of initiative may be used. In the second paragraph of this section it is said that, "Every such petition shall contain the full text of the measure and shall be filed with the secretary of state not less than ninety days before the election at which it is to be voted upon." This provision applies with full force and verbatim to proposals to amend the Constitution except that § 202 requires the petition to be filed with the secretary of state at least one hundred twenty days prior to the election.

At the primary election in June, 1938, a purported amendment and re-enactment of § 82 of the Constitution of the state of North Dakota was submitted to the voters and received a majority of the votes cast thereon. This purported amendment was proposed by initiative petition and, among other things, provided, "The tax commissioner shall be elected on a no-party ballot and he shall be nominated and elected in the manner now provided for the nomination and election of the superintendent of public instruction." The portion of the proposal above quoted is entirely new. Nothing like it appeared theretofore in § 82. In fact, nothing like it has ever appeared before in the Constitution of this State. If this provision is effective it imbeds in the Constitution wholly by reference all of the statutory law which at the time of the adoption of the amendment provided for the nomination and election of the superintendent of public instruction as the manner of electing a tax commissioner. While this provision contains on its face but one sentence, it, in fact, embraces those provisions of statutory law to which it may be fairly said to refer. This statutory law does not

appear upon the petition. Anyone who reads the petition does not find therein all of the proposed amendment. It can only be ascertained by examination of the statutes of the state. Sections of the statute are not even referred to. The deficiency must be supplied either from a general knowledge of the law on the part of signers and voters, or by a search for the letter of the law through the various provisions pertaining to the nomination and election of the superintendent of public instruction. The question of the sufficiency of a petition which incorporated by reference certain statutory provisions was passed upon in the case of Dyer v. Hall, 51 N. D. 391, 199 N. W. 754, wherein it was said, "The framers of the amendment to the Constitution, providing for the initiative and the referendum, were careful to require that every petition contain the full text of the constitutional amendment proposed. The reason for this requirement is obvious. The twenty-sixth article of the amendments (now § 25) requires the secretary of state to mail to every voter in the state a publicity pamphlet 'containing a copy of each measure together with its ballot title, to be submitted at any election.' The average voter does not have conveniently at hand the text of the Constitution or the statutes of this state; if, therefore, he is to have an opportunity to know fully and intelligently what he is doing when he signs or declines to sign a petition, or votes on a proposed amendment, it is only if the full text of the proposed amendment to the Constitution be inserted in the petition, and embodied in the publicity pamphlet sent him, that he will be able to do so. Before he votes, if the proponents of the measure faithfully do their duty, he will have an opportunity to read a ballot title that fairly and briefly represents the measure proposed, or if he desire, he may read the full text of the amendment. If, however, provisions of the Constitution, or provisions of statutes, are incorporated in the proposed amendment, by reference only, the signers of petitions and voters have no opportunity to read or examine fairly the contents and appreciate the real import of the proposed amendment. . . . We see no reason why the secretary of state should accept as sufficient petitions that, upon their face, fail to comply with this mandatory provision of the Constitution. The notion that the fundamental law of the state can be weighted, in the manner here attempted, by incorporating therein by reference only a large number of statutes, enacted during a period of many years and scattered

throughout several volumes of compiled statutes and session laws, is entirely novel in American jurisprudence." According to Dyer v. Hall, supra, the petition in the case before us fails to state the full text of the measure. See also Preckel v. Byrne, 62 N. D. 356, 243 N. W. 823; Scott v. Secretary of State, 202 Mich. 629, 168 N. W. 709. The majority opinion disposes of this failure by holding that the defect can be taken advantage of only prior to the election and that after the people have approved the measure, the defect, if any, has become cured or at least can no longer be urged as fatal to the validity of the amendment. In so deciding the majority opinion leans heavily upon the following provision of § 25: "The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the time the ballot is prepared, the secretary of state shall place the measure on the ballot and no subsequent decision shall invalidate such a measure if it is at such election approved by a majority of the votes cast thereon." I am firmly convinced that this quotation will not sustain the burden which the majority opinion places upon it. Giving to it all the possible implications that may reasonably be said to emanate therefrom the most that can be said for the provision quoted is that after election a measure may not be attacked for defects in the petition. This provision clearly can go no further. It cannot cure defects in the manner of submitting the measure to a vote of the people when those defects amount to substantial violations of mandatory provisions of the Constitution.

An examination of the record in this case discloses that aside from the defects contained in the petition itself two major violations of § 25 occurred during the process of enactment. Both of these violations deal with the manner of submission of the measure in question. Submission consists of two major steps. First, publication and second, election. With regard to the first step, we find that, "All measures submitted to the electors shall be published by the state as follows: 'The secretary of state shall cause to be printed and mailed to each elector a publicity pamphlet containing a copy of each measure together with its ballot title to be submitted at any election.'" The proper publication of

measures is an important step in their enactment. It is the means prescribed by the Constitution of informing the voters in advance of the election as to the contents of the proposals which they will later find upon their ballots when they go to the polls. The publicity pamphlet is designated as the medium of such publication. In it must appear "a copy of each measure." That can only mean the entire measure, the full text of the measure. In this case the publicity pamphlet contained only a copy of the material that appeared in the defective petition which, as has been pointed out, did not set forth the full text of the measure. The publication in the publicity pamphlet did not embrace a copy of a measure which contained a full text, and the publication, therefore, was to that extent, defective. The voters were not given an oportunity to read in the publicity pamphlet all of the measure which they were asked to approve or reject.

The failure of the publicity pamphlet to carry the full text of the measure was not the only defect in publication. Section 25 contains the requirement that, "Each petition shall have printed thereon a ballot title which shall fairly represent the subject matter of the measure." The publicity pamphlet must contain not only a copy of the measure, but also its ballot title. The ballot title is of extreme importance; it is also required to be on the ballot. "Each measure initiated by or referred to the electors shall be submitted by its ballot title, which shall be placed upon the ballot by the secretary of state. . . ." The ballot title which was submitted falls far short of meeting the requirements of the Constitution. It reads as follows: "An Act Amending § 82 of the State Constitution, to Provide for the Election of a Tax Commissioner on a No-Party Ballot, for a Four-Year Term." The only amendment suggested by the ballot title is the election of a tax commissioner, but an examination of the text of the proposal discloses two other changes. The name of the office of secretary of state is changed to that of secretary by deleting the words "of state." A much more important change, also unmentioned and unimplied by the ballot title, is made by reducing the terms of office of the commissioners of railroads from six years to two years.

It is suggested that the defects in the ballot title were cured by the publication of the proposal in full in the pamphlet and on the ballot. Neither the law nor the Constitution requires such publication. It was

entirely a voluntary act on the part of the secretary of state. The publication of the ballot title was made in large bold type. The publication of the text of the proposal was in small type. A ballot title "which shall fairly represent the subject matter of the measure" is a mandatory requirement of the Constitution. The fact that the secretary of state did something which he was not required to do by causing the entire measure to be printed in small type under the defective title will not cure the defect. He cannot be permitted to substitute that which is not required for something which is specifically required by the Constitution.

The importance of a proper publication of a proposed amendment to the Constitution is emphasized by the Supreme Court of Pennsylvania in these words: "The Constitution is the fundamental law of our commonwealth, and, in matters relating to alterations or changes in its provisions, the courts must exercise the most rigid care to preserve to the people the right assured to them by that instrument. No method of amendment can be tolerated which does not provide the electorate adequate opportunity to be fully advised of proposed changes." Com. ex rel. Atty. Gen. v. Beamish, 309 Pa. 510, 164 A. 615. The test of the sufficiency of a ballot title is that such title should be sufficiently complete to convey an intelligent idea of the scope and importance of the proposal and should be free from any tendency to mislead which might result from either overstatement, false statement, or omission. Westbrook v. McDonald, 184 Ark. 740, 43 S. W. (2d) 356, 44 S. W. (2d) 331; Newton v. Hall, 196 Ark. 929, 120 S. W. (2d) 364.

Different rules apply in viewing the procedure and requirements of the amending processes before and after the election. When an attack is made upon a proposed amendment before election it is generally held that procedural requirements are mandatory and must be strictly followed. If an election has already been had the rule of strictness as to procedure is relaxed. Substance is more important than form, and the will of the people expressed at a proper time and in a proper manner is not to be lightly disregarded. However, this rule of construction should not be extended to uphold the validity of a purported amendment which is defective in substance and has passed through the formality of an election without being safeguarded by even a substantial compliance with the mandatory provisions for the enlightenment of the

electorate. It is the duty of the courts to declare void any amendment the passage of which has been obtained in such a manner.

An election is not a cure-all for ailing amendments. In McAdams v. Henley, 169 Ark. 97, 273 S. W. 355, 41 A.L.R. 629 (see also note in 41 A.L.R. 640), the court held that provisions of the Constitution of Arkansas with reference to the method of adopting amendments are mandatory and must be complied with in order to effect a valid amendmuent, and that under a constitutional requirement that proposed amendments to the Constitution shall be entered on the journals an amendment adopted by the electors is invalid if it does not correspond to the journal entry. In Boyd v. Olcott, 102 Or. 327, 202 P. 431, the validity of the enactment of an amendment was upheld since there appeared to have been a substantial compliance with constitutional provisions. The court, in the opinion, however, says, "The Constitution prescribes the method by which it may be amended, and the procedure so prescribed is the measure of the power to amend. The provisions of the Constitution for its own amendment are mandatory and binding, not only upon the Legislative Assembly, but also upon all the people as well; and, consequently, a failure to observe the mandates of the Constitution is fatal to a proposed amendment, even though the electors have with practical unanimity voted for it." In State ex rel. Hall v. Cline, 118 Neb. 150, 224 N. W. 6, the Supreme Court of Nebraska had before it the question of the validity of a constitutional amendment that had been approved at an election. The Constitution of Nebraska provided that proposed amendments should be published once each week for four weeks in at least one newspaper in each county immediately preceding the election. This provision was not complied with although publication had been made in 422 newspapers in an attempt to comply wtih a statute that had erroneously been thought to be applicable. The court, in dealing with the question of the sufficiency of the publication to sustain a valid amendment, says:

"The question then is resolved into the inquiry whether the acts done and notice given can, by any reasonable construction or interpretation, be held to be a substantial compliance with the constitutional requirements. We are reminded in argument that it will not do to require a too rigid adherence to mere details of procedure, that the large vote

cast on the proposition demonstrates the actuality of notice to the electors, and that the people should not be hindered in receiving the benefits of an amendment which they have approved by a substantial majority.

. . . . . . . . . . . . . .

"The same authority urged upon us in this regard, the people, have already prescribed in their fundamental law how a change thereof may be accomplished. That mandate is of as high an order and as binding upon both the government and the governed as any other that can come from the same source. It is poor argument to say that, rather than rectify an oversight, we must violate existing provisions of our Constitution in order to engraft upon it a new provision which has not received the notice the people have prescribed as necessary to an adoption thereof."

I agree with the majority opinion in holding that a measure cannot be successfully attacked after election for defects in the petition by which the measure was initiated. I depart from the holding of the majority upon the proposition that the failure to substantially comply with the manner of submission to the people provided by the Constitution is cured by the election. Unless submission is had in substantial compliance with the provisions of the Constitution, opportunity is given to perpetrate fraud upon the electorate or to mislead the voters through error or design. In this case a proposal was submitted that did not "contain the full text of the measure" under a ballot title that failed to "fairly represent the subject matter of the measure." The purported amendment was not submitted to the people in substantial compliance with the mandatory provisions of the Constitution regarding the enactment of amendments. The submission was substantially and fatally defective. The amendment is void.